DELMER D. PRESSLEY, PLAINTIFF v. SOUTHWESTERN FREIGHT LINES, AND LIBERTY MUTUAL INSURANCE CO., DEFENDANTS

No. COA00-750

(Filed 19 June 2001)

### 1. Workers' Compensation— occupational disease—coccidioidomycosis—increased exposure than general public

The Industrial Commission did not err by awarding plaintiff truck driver workers' compensation benefits for an occupational disease under N.C.G.S. § 97-53 for his contraction of coccid-

ioidomycosis and finding that plaintiff's work as a truck driver required him to travel to California where he had an increased risk of being exposed to the disease compared to the general public, because: (1) the term "general public" pertains to the general public of North Carolina; and (2) coccidioidomycosis is not generally contracted in North Carolina.

2. **Workers' Compensation— occupational disease—coccidioidomycosis—exposure during course and scope of employment**

The Industrial Commission did not err by concluding that there was competent evidence to support its finding that plaintiff truck driver likely was exposed to the occupational disease of coccidioidomycosis in October 1991 while in the course and scope of his employment, because: (1) the fungus is not present in the soil in North Carolina but solely in the southwestern United States, including California where plaintiff's employer required him to carry goods; and (2) although it is possible to be exposed to the spores and have asymptomatic infection which might not become symptomatic until one to three weeks later, plaintiff did not visit his brother who lives in Arizona during his trips in October 1991.

Appeal by defendants from opinion and award entered 17 February 2000 by the North Carolina Industrial Commission. Heard in the Court of Appeals 19 April 2001.

*Richard B. Harper for plaintiff-appellee.*

*Roberts & Stevens, P.A., by Elizabeth N. Rich, for defendant-appellants.*

MARTIN, Judge.

Defendants appeal from an opinion of the North Carolina Industrial Commission awarding plaintiff workers' compensation benefits for an occupational disease. Plaintiff, a long distance truck driver, initiated this action by filing a Form 18, Notice of Accident to Employer, alleging that he contracted coccidioidomycosis in October 1991 while carrying goods for defendant Southwestern Freight Lines between Los Angeles and Bakersfield, California. He alleged that he contracted the disease by exposure to dust-born fungus or mold. Defendants denied liability on the grounds plaintiff "does not suffer from a compensable occupational disease." Following a hearing, the

deputy commissioner filed an opinion and award on 30 March 1998 concluding plaintiff "has not sustained an occupational disease within the meaning of the Workers' Compensation Act" because he failed to prove that the "disease was characteristic of and peculiar to his employment as a truck driver, and was not an ordinary disease of life to which the general public would be equally exposed."

The Full Commission reversed on appeal, finding in pertinent part:

> 5. . . . A biopsy performed on a lymph node removed from plaintiff's chest showed the presence of a coccidioidomycosis fungus organism. This organism lives in the soil and sand found in the southwestern United States, including Arizona, New Mexico, and southern California. It does not grow in North Carolina or in any state east of the Mississippi River. The organism can become airborne and inhaled, leading to infection in humans.
>
> . . .
>
> 7. Plaintiff contracted coccidioidomycosis due to exposure to the organism which causes the disease while traveling in the southwestern United States. It is most likely that plaintiff inhaled the organism while in the course of his truck driving for defendant-employer. Plaintiff faced no real risk of exposure to this disease in North Carolina.
>
> . . .
>
> 10. Plaintiff's work as a truck driver, which required him to travel to an area of the country where he could be exposed to the coccidioidomycosis fungus, placed him at an increased risk of contracting the disease when compared to the general public not so employed.

The Commission concluded, *inter alia*:

> 1. Plaintiff has sustained an occupational disease within the meaning of the Workers' Compensation Act. Plaintiff contracted the disease of coccidioidomycosis due to exposure to fungus spores in the southwestern United States while traveling in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-53(13).
>
> 2. In determining whether plaintiff's occupation placed him at an increased risk over that of the general public of contracting a dis-

ease, it need not be shown that the disease originates exclusively from the occupation in question. Rather it must be demonstrated that the conditions of the employment resulted in a hazard which is not present in employment generally. *Booker v. Duke Medical Center*, 297 N.C. 458, 256 S.E.2d 189 (1979). In this case, but for the employment-related requirement of travelling [sic] through an area where he was exposed to the fungus, plaintiff would not have contracted the disease. Members of the general public who do not face a like requirement in their occupations are not subject to the same risk; therefore plaintiff faced an increased risk of contracting coccidioidomycosis than that of the general population in North Carolina.

3. Proof of causal connection between a disease and an employee's occupation may consist of the following: (1) the extent of exposure to the disease or disease-causing agents during employment, (2) the extent of exposure outside employment, and (3) absence of the disease prior to the work-related exposure as shown by the employee's medical history. *Id.* In the instant case, plaintiff's sole avenue of exposure came while driving through the infested area of the southwest as required by his employment. Persons whose employment does not require them to travel to the infested areas of the country are not so exposed. Accordingly, there is essentially no exposure to the general public as a result of their jobs outside of such employment. Lastly, there is no history of the disease in plaintiff's medical records prior to the work-related exposure. For these reasons, the causal connection between plaintiff's employment and the disease has been adequately established, and plaintiff is entitled to compensation under the Act.

The Commission awarded plaintiff benefits for temporary total disability, temporary partial disability and for on-going medical care.

---

Our review of the Full Commission's opinion and award is limited to whether the findings of fact are supported by any competent evidence in the record and whether those findings support the Commission's conclusions of law. *Goff v. Foster Forbes Glass Div.*, 140 N.C. App. 130, 535 S.E.2d 602 (2000). Defendants argue there was not competent evidence in the record to support the Commission's findings of fact, and that the findings do not support the conclusion of law that plaintiff sustained a compensable occupational disease within the meaning of the Workers' Compensation Act.

PRESSLEY v. SOUTHWESTERN FREIGHT LINES

[144 N.C. App. 342 (2001)]

G.S. § 97-53 enumerates the compensable occupational diseases under the Act. The Section specifically enumerates twenty-seven diseases; coccidioidomycosis is not among those diseases. However G.S. § 97-53(13) additionally provides compensability for:

> Any disease, other than hearing loss covered in another subdivision of this section, which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment.

At issue in the case before us is whether plaintiff's contraction of coccidioidomycosis fits within this provision as a compensable occupational disease.

The burden is on the plaintiff to show that he suffered a compensable occupational disease under G.S. § 97-53(13). *Norris v. Drexel Heritage Furnishings, Inc./Masco*, 139 N.C. App. 620, 534 S.E.2d 259 (2000), *cert. denied*, 353 N.C. 378, 547 S.E.2d 15 (2001). Our courts have held the plaintiff must prove the following elements: (1) the disease is characteristic of and peculiar to persons engaged in a particular trade or occupation in which the plaintiff is engaged; (2) "the disease is not an ordinary disease of life to which the public is equally exposed;" and (3) there is a causal connection between the disease and the plaintiff's employment. *Hansel v. Sherman Textiles*, 304 N.C. 44, 52, 283 S.E.2d 101, 106 (1981).

[1] Defendants first argue that plaintiff failed to prove the first and second elements listed above, and accordingly there was not competent evidence to support the Commission's finding that "[p]laintiff's work as a truck driver, which required him to travel to an area of the country where he could be exposed to the coccidioidomycosis fungus, placed him at an increased risk of contracting the disease when compared to the general public not so employed." The Supreme Court has stated:

> [T]he first two elements are satisfied if, as a matter of fact, the employment exposed the worker to a greater risk of contracting the disease than the public generally. "The greater risk in such cases provides the nexus between the disease and the employment which makes them an appropriate subject for workmen's compensation."

*Rutledge v. Tultex Corp./Kings Yarn*, 308 N.C. 85, 93-94, 301 S.E.2d 359, 365 (1983) (quoting *Booker v. Duke Medical Center*, 297 N.C. 458, 475, 256 S.E.2d 189, 200 (1979)). As defendants correctly point out and we now re-emphasize, the statute employs an "increased risk" test and not a positional, or "but for", analysis. *See Minter v. Osborne Co.*, 127 N.C. App. 134, 487 S.E.2d 835, *disc. review denied*, 347 N.C. 401, 494 S.E.2d 415 (1997).

The dispositive issue in this case is what is meant by the term "general public." The deposition testimony of plaintiff's treating physicians established that plaintiff's risk of exposure to the disease as a truck driver did not exceed that of the general public living or traveling in the southwestern United States; however, the risk of exposure did exceed that of the general public of North Carolina because the spores are not present in the soil in North Carolina.

The statute does not define what is meant by the term "general public" and our courts have not previously interpreted its scope. If a statute "is ambiguous or unclear in its meaning, resort must be had to judicial construction to ascertain the legislative will." *In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 389 (1978). In *Booker v. Duke Medical Center*, the Supreme Court stated "[t]he clear intent of the General Assembly in enacting the current version of G.S. 97-53(13) was to bring North Carolina in line with the vast majority of states by providing comprehensive coverage for occupational diseases." 297 N.C. at 469, 256 S.E.2d at 196. The Court then borrowed language from various other jurisdictions in interpreting the "characteristic of" and "peculiar to" language of the provision. *Id.* at 472-73, 256 S.E.2d at 198-99. However, in the case before us, we find little guidance from other jurisdictions in interpreting the meaning of our "general public" provision because the jurisdictions appear to be divided. In *Montgomery v. Industrial Commission of Arizona*, 173 Ariz. 106, 109, 840 P.2d 282, 285 (1992), for example, the Court of Appeals of Arizona interpreted a similar test as referring to the general public of Arizona. The court held that the plaintiff, who was bitten by a tick that carried Lyme disease while traveling on business in California, successfully met his burden of proof because the evidence: (1) established that Lyme disease does not exist in Arizona and, (2) "indicated that any exposure to Lyme disease that he experienced in connection with his employment would exceed that of Arizona's general population." In *Pacific Employers Ins. Co. v. Industrial Accident Comm'n*, 19 Cal.2d 622, 630, 122 P.2d 570, 574 (1942), however, the Supreme Court of California held that coccidioidomycosis was a compensable

disease because the plaintiff was able to show that "the risk to which he was subjected by his employment was not the same *as that of the public in the endemic area* inasmuch as the great majority of the inhabitants there possessed an immunity" which the plaintiff lacked. (emphasis added). *See also* 1 A. Larson, *The Law of Workman's Compensation* § 5.05 at 5.23 to -24 (2000).

Therefore, we turn to other canons employed by the courts in interpreting the Workers' Compensation Act. *Deese v. Southeastern Lawn & Tree Expert Co.*, 306 N.C. 275, 293 S.E.2d 140, *reh'g denied*, 306 N.C. 753, 303 S.E.2d 83 (1982). First, the Act is to be construed liberally, and benefits are not to be denied upon technical, narrow, or strict interpretation of its provisions. *Id.* at 277, 293 S.E.2d at 143. Second, a liberal construction should not "extend beyond the clearly expressed language of those provisions, and our courts may not enlarge the ordinary meaning of the terms used by the legislature or engage in any method of 'judicial legislation.' " *Id.* Third, "the judiciary should avoid 'ingrafting upon a law something that has been omitted, which [it] believes ought to have been embraced.' " *Id.* at 278, 293 S.E.2d at 143 (quoting *Shealy v. Associated Transport*, 252 N.C. 738, 741, 114 S.E.2d 702, 705 (1960)). Finally, "the Industrial Commission's legal interpretation of a particular provision is persuasive, although not binding, and should be accorded some weight on appeal." *Id.*

Applying the above principles to the facts of this case, we interpret the term "general public" as pertaining to the general public of North Carolina. This interpretation employs a liberal construction in favor of the employee, and is consistent with the determination made by the Industrial Commission which we view as persuasive. Moreover, this interpretation does not enlarge the ordinary meaning of this term. The American Heritage College Dictionary defines "general" as "concerned with, applicable to, or affecting the whole or every member of a class or category." *The American Heritage College Dictionary* 566 (3rd ed. 1997). It defines "public" as "[o]f, concerning, or affecting the community or the people." *Id.* at 1106. In this case, we are simply defining the scope of the class, category or community as that of the general public of North Carolina. In light of this interpretation, the Commission's finding of fact that plaintiff's work as a truck driver placed him at an increased risk of contracting the disease when compared to the general public not so employed is supported by the evidence showing that coccidioidomycosis is not generally contracted in North Carolina.

**[2]** Defendants next argue there is no competent evidence in the record to support the Commission's finding that plaintiff most likely was exposed to the organism while in the course and scope of his employment. It is undisputed that the fungus is not present in the soil in North Carolina but solely in the southwestern United States; therefore, plaintiff was exposed to the fungus while traveling in the southwest. However, defendants contend that there is evidence in the record that plaintiff has visited a brother who lives in Arizona and plaintiff could have been exposed to coccidioidomycosis during those visits. They point to Dr. Washburn's testimony that it is possible for a person to be exposed to the spores and have an asymptomatic infection which might not become symptomatic for years. However, Dr. Washburn also testified:

> If they're going to become symptomatic in the reasonably near future from it, then they become symptomatic in one to three weeks. So that he would fit the incubation period if he had been in California two weeks before he started feeling poorly.

Moreover, plaintiff testified that he did not visit his brother during his trips in October 1991. In light of this testimony, we hold there is competent evidence in the record to support the Commission's finding as to causation. The findings of fact support its conclusions of law that plaintiff's coccidioidomycosis is compensable.

Affirmed.

Judges THOMAS and BIGGS concur.