566 S.E.2d 807 (2002)
Sabrina PITILLO, Employee/Plaintiff,
v.
N.C. DEPARTMENT OF ENVIRONMENTAL HEALTH AND NATURAL RESOURCES, Employer/Self-Insured,
Key Risk Management Services, Carrier/Defendant.
No. COA01-999.
Court of Appeals of North Carolina.
August 6, 2002.
*809 Law Offices of George W. Lennon, by George W. Lennon and Michael W. Ballance, Raleigh, for plaintiff-appellant.
Attorney General Roy Cooper, by Special Deputy Attorney General Jonathan P. Babb, for defendant-appellees.
BIGGS, Judge.
Sabrina Pitillo (plaintiff) appeals from the Industrial Commission's denial of her workers' compensation claim. For the reasons that follow, we affirm the Industrial Commission.
Plaintiff began work for the North Carolina Department of Environmental Health and Natural Resources (defendant; with Key Risk Management Services, Inc., collectively, defendants), in 1995, as a waste management specialist. She was responsible for inspection of commercial hazardous waste facilities, which required travel to industrial work sites in order to ascertain whether companies were in compliance with applicable environmental laws and regulations. In June 1997, plaintiff received an annual performance review from her supervisor, Ms. Arms. She received ratings of "outstanding" or "very good" in twelve areas, and a rating of "good" in two areas, for an overall rating of "very good plus." Plaintiff was very upset that she was rated "good" in two areas, and angry that the "good" ratings were based in *810 part upon input from unidentified co-workers. To "appeal the inclusion of alleged comments" in her review, plaintiff sought a meeting with Mike Kelly, the deputy director of the Division of Waste Management, and Brenda Rivers, personnel officer in the division's department. Plaintiff wrote Kelly that Arms' performance evaluation was "arbitrary and capricious"; that she was "outraged" at her annual evaluation; and that she had decided to "stand up to this injustice."
The meeting requested by plaintiff took place in Raleigh, on 24 July 1997. In attendance were plaintiff, Kelly, Rivers, Arms, and Ann Waddell, the manager of employee relations for the Department. Rivers later testified that she informed plaintiff in advance that Arms and Waddell would be included. The meeting focused on plaintiff's job performance, and on her concerns about the annual evaluation. There was also discussion of areas in which her supervisor saw some room for improvement.
The meeting ended after two hours of discussion, with no change in plaintiff's employment status or her overall performance rating of "very good plus." After the meeting, as plaintiff was driving home, she became very upset, stopped driving, and called her fiancee for help. The following day, plaintiff met with Dr. Patel, her family doctor, who referred her to Dr. Patterson, a psychiatrist. Plaintiff received extensive psychiatric treatment during the following months, including medication, outpatient care for psychiatric illness, and psychiatric counseling from two psychiatrists.
On 21 August 1997, plaintiff filed an Industrial Commission Form 18 "Notice of Accident to Employer," in which she alleged that the 24 July 1997 meeting in Raleigh either constituted a workplace accident, or had precipitated an occupational disease. She sought workers' compensation benefits for "stress induced anxiety" and a "diagnosed nervous breakdown." Defendants denied her claim on 24 September 1997, and the matter was subsequently heard by a deputy commissioner of the Industrial Commission. On 28 March 2000 the deputy commissioner issued an opinion denying plaintiff's claim for workers' compensation benefits. Plaintiff appealed to the Full Commission for a hearing, and filed a motion to compel a full accounting of bills submitted and fees received by Dr. Arnoff, a defense witness. The Commission issued an opinion on 2 May 2001, denying plaintiff's claim for benefits. They did not rule on plaintiff's motion to compel an accounting of Dr. Arnoff's fees. Plaintiff appealed from the Commission's Opinion and Award.

Standard of Review
"The standard of appellate review of an opinion and award of the Industrial Commission in a workers' compensation case is whether there is any competent evidence in the record to support the Commission's findings of fact and whether these findings support the Commission's conclusions of law." Lineback v. Wake County Board of Commissioners, 126 N.C.App. 678, 680, 486 S.E.2d 252, 254 (1997). Moreover:
[T]he Industrial Commission is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. The Commission may accept or reject the testimony of a witness solely on the basis of whether it believes the witness or not.
Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982) (citation omitted). "The Commission chooses what findings to make based on its consideration of the evidence[, and this] court is not at liberty to supplement the Commission's findings[.]" Bailey v. Sears Roebuck & Co., 131 N.C.App. 649, 653, 508 S.E.2d 831, 834 (1998). The Industrial Commission's findings of fact "are conclusive upon appeal if supported by competent evidence," even if there is evidence to support a contrary finding, Morrison v. Burlington Industries, 304 N.C. 1, 6, 282 S.E.2d 458, 463 (1981), and may be set aside on appeal only "when there is a complete lack of competent evidence to support them[.]" Young v. Hickory Bus. Furn., 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000).

I.
Plaintiff argues first that the Commission erred in its conclusion that plaintiff did not suffer an "injury by accident." We disagree.
*811 Workers' compensation "does not provide compensation for injury, but only for injury by accident." O'Mary v. Clearing Corp., 261 N.C. 508, 510, 135 S.E.2d 193, 194 (1964). Thus, an injury is compensable under the North Carolina Workers' Compensation Act only if (1) it is caused by an "accident," and (2) the accident arises out of and in the course of employment. N.C.G.S. § 97-2(6) (2001). "The claimant bears the burden of proving these elements[,]" including the existence of an accident. Smith v. Pinkerton's Sec. and Investigations, 146 N.C.App. 278, 280, 552 S.E.2d 682, 684 (2001) (citing Pickrell v. Motor Convoy, Inc., 322 N.C. 363, 368 S.E.2d 582 (1988)). In the present case, plaintiff contends that the psychological trauma of her performance review meeting on 24 July 1997, constituted a workplace "accident," thus, meeting the first part of the statutory test for compensability.
An accident under the workers' compensation act has been defined as "`an unlooked for and untoward event which is not expected or designed by the person who suffers the injury,'" and which involves "`the interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences.' " Calderwood v. Charlotte-Mecklenburg Hosp. Auth., 135 N.C.App. 112, 115, 519 S.E.2d 61, 63 (1999) (quoting Adams v. Burlington Industries, 61 N.C.App. 258, 260, 300 S.E.2d 455, 456 (1983)), disc. review denied, 351 N.C. 351, 543 S.E.2d 124 (2000) (accident occurred where plaintiff was injured when required to lift the legs of a 263 pound patient, a task she had never in her eleven years of work done before). If an injury occurs under normal working conditions, no accident has occurred. Ruffin v. Compass Group, U.S.A., ___ N.C.App.___, 563 S.E.2d 633 (2002).
Plaintiff correctly states that a mental or psychological illness may be a compensable injury if it has occurred as a result of an accident arising out of and in the course of the claimant's employment. See Jordan v. Central Piedmont Community College, 124 N.C.App. 112, 476 S.E.2d 410 (1996), disc. review denied, 345 N.C. 753, 485 S.E.2d 53 (1997) (upholding award of benefits to prison instructor who suffered post-traumatic stress disorder after inmate students engaged in violent fight while plaintiff was isolated from other prison employees or guards). However, an injury is not a compensable "injury by accident" if the relevant events were "neither unexpected nor extraordinary," and it was only the "[claimants'] emotional response to the [events that] was the precipitating factor." Cody v. Snider Lumber Co., 328 N.C. 67, 71, 399 S.E.2d 104, 106 (1991).
In the case sub judice, plaintiff does not allege that the meeting's occurrence was unexpected, for it was called at her request. She contends, however, that the presence of Arms and Waddell, the subject matter discussed, and the participant's behavior towards her, all were unexpected and traumatic. Her testimony to this effect was contradicted by testimony from others who attended the meeting, presenting issues of credibility to be resolved by the Industrial Commission. In this regard, the Industrial Commission made the following pertinent findings of fact:
....
9.... [T]he greater weight of the evidence presented ... indicates that the discussion was a routine, problem-solving meeting in which everyone was treated courteously and with respect. Plaintiff was not verbally attacked, reprimanded or severely criticized. Nothing in this meeting was different from other meetings to discuss performance evaluations....
10. At the meeting plaintiff's supervisors encouraged plaintiff to be less adversarial... [and] to develop cooperative relationships and to establish rapport with the industry in order to facilitate compliance....
....
20.... [P]laintiff's account of the meeting on July 24, 1997 ... was not an accurate representation of what actually occurred at the meeting. The Commission gives greater weight to the testimony of ... the four [other] individuals present [at the meeting.]
21. The Commission finds that the greater weight of the competent, credible evidence of record shows that the events of July 24, 1997 did not constitute an unexpected, unusual or untoward occurrence, *812 nor did the meeting constitute an interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. The meeting to discuss plaintiff's job performance evaluation was requested by plaintiff and was an ordinary incident of employment. Prior to the meeting, plaintiff knew who would be present at the meeting.
We conclude that these findings are amply supported by competent evidence in the record, and further conclude that they support the Industrial Commission's conclusion that plaintiff did not suffer an injury by accident. Accordingly, this assignment of error is overruled.

II.
Plaintiff argues next that the meeting of 24 July 1997, which she has argued was an "accident," also meets the second requirement for a compensable injury, in that it was an accident that "arises out of and in the course of employment."
An injury is said to `arise out of the employment'"[w]here any reasonable relationship to the employment exists, or employment is a contributory cause[.]" Allred v. Allred-Gardner, Inc., 253 N.C. 554, 557, 117 S.E.2d 476, 479 (1960) (citations omitted). The determination of whether an injury "`arises out of employment' is a mixed question of law and fact[.]" Janney v. J.W. Jones Lumber Co., 145 N.C.App. 402, 404, 550 S.E.2d 543, 546 (2001) (quoting Mills v. City of New Bern, 122 N.C.App. 283, 284, 468 S.E.2d 587, 589 (1996)). "This Court has held that an injury is compensable under workers' compensation if it is ... `fairly traceable to the employment' ... or if `any reasonable relationship to employment exists.' " Pittman v. International Paper Co., 132 N.C.App. 151, 154, 510 S.E.2d 705, 707 (1999) (quoting White v. Battleground Veterinary Hosp., 62 N.C.App. 720, 723, 303 S.E.2d 547, 549, disc. review denied, 309 N.C. 325, 307 S.E.2d 170 (1983)).
In the case sub judice, the Industrial Commission found in its finding of fact number 22, that although plaintiff's job duties generally were not "a significant causal factor in the development of [her] psychological condition[,]" that "the meeting of July 24, 1997 contributed to or was a significant causal factor in the development of plaintiff's psychological condition." We conclude that this finding of fact was supported by competent evidence, and thus must be upheld. However, this finding does not entitle plaintiff to workers' compensation unless the injury was caused by a workplace accident. Cody, 328 N.C. at 71, 399 S.E.2d at 106 (heart attack not compensable as injury by accident where the "events comprising the `situation' ... were neither unexpected nor extraordinary," and heart attack was precipitated by claimant's emotional overreaction to ordinary situation). Having upheld the Industrial Commission's conclusion that the meeting of 24 July 1997 was not a workplace "accident," we necessarily reject plaintiff's contention that she suffered a compensable injury as a result of the meeting. This assignment of error is overruled.

III.
Plaintiff argues next that the Industrial Commission erred by concluding that she did not suffer from an occupational disease. We disagree.
N.C.G.S. § 97-53 (2001) lists twenty-seven specifically designated compensable occupational diseases. Although psychological illness is not listed among these, N.C.G.S. § 97-53(13) (2001) expands the definition of an occupational disease to include "[a]ny disease, [caused by] ... conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment." "The burden is on the plaintiff to show that he suffered a compensable occupational disease[.]" Pressley v. Southwestern Freight Lines, 144 N.C.App. 342, 346, 551 S.E.2d 118, 120 (2001). In Pressley, this Court stated that:
the plaintiff must prove the following elements: (1) the disease is characteristic of and peculiar to persons engaged in a particular trade or occupation in which the plaintiff is engaged; (2) "the disease is not an ordinary disease of life to which the public is equally exposed;" and (3) there is *813 a causal connection between the disease and the plaintiff's employment.
Pressley, 144 N.C.App. at 346, 551 S.E.2d at 120 (quoting Hansel v. Sherman Textiles, 304 N.C. 44, 52, 283 S.E.2d 101, 106 (1981)).
Under appropriate circumstances, work-related depression or other mental illness may be a compensable occupational disease. Jordan v. Central Piedmont Community College, 124 N.C.App. 112, 476 S.E.2d 410 (1996); Baker v. City of Sanford, 120 N.C.App. 783, 463 S.E.2d 559 (1995), disc. review denied, 342 N.C. 651, 467 S.E.2d 703 (1996). However, the claimant must prove that the mental illness or injury was due to stresses or conditions different from those borne by the general public. Woody v. Thomasville Upholstery Inc., 355 N.C. 483, 562 S.E.2d 422 (2002) (adopting dissent in 146 N.C.App. 187, 202, 552 S.E.2d 202, 211 (2001)). Thus, the claimant must establish both that her psychological illness is "`due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment'" and that it is not "`an ordinary disease of life to which the general public is equally exposed.'" Booker v. Medical Center, 297 N.C. 458, 468, 256 S.E.2d 189, 196 (1979) (quoting N.C.G.S. § 97-53(13) (2001)); see also Norris v. Drexel Heritage Furnishings, 139 N.C.App. 620, 534 S.E.2d 259 (2000) (upholding denial of claim based on occupational disease: although plaintiff's fibromyalgia was caused or aggravated by employment with defendant, there was no evidence that her employment with defendant placed plaintiff at an increased risk of contracting or developing fibromyalgia as compared to the general public not so employed).
In the case sub judice, the Commission made the following pertinent findings:
....
22. The greater weight of the evidence of record fails to show that plaintiff's job duties significantly contributed to or were a significant causal factor in the development of plaintiff's psychological condition....
23. The greater weight of the medical evidence fails to show that plaintiff's job as a waste management specialist exposed her to an increased risk of developing anxiety disorder and depression than members of the general public not so employed.
The Commission concluded that plaintiff "failed to prove by the greater weight of the evidence that she sustained a compensable occupational disease. Plaintiff's employment with defendant-employer did not place plaintiff at an increased risk of developing anxiety disorder and depression than members of the general public not so employed."
We hold that the Commission's findings are supported by competent evidence. Although plaintiff testified to several minor incidents at work in support of her contention that she suffered from an occupational disease, no evidence was presented that these incidents contributed to her emotional illness, nor that the "diagnosed nervous breakdown" or "stress induced anxiety" for which she sought compensation were (1) "characteristic of and peculiar to [her] particular trade or occupation" or employment; (2) "not an ordinary disease of life to which the public is equally exposed"; or that (3) "there is a causal connection between the disease and the plaintiff's employment." Pressley, 144 N.C.App. at 346, 551 S.E.2d at 120.
We conclude that the Industrial Commission's findings of fact support its conclusion that plaintiff failed to establish that her psychological depression or anxiety disorder was a compensable occupational disease. Accordingly, this assignment of error is overruled.

IV.
Plaintiff's final argument is that the Commission erred by failing to rule on her motion to compel an accounting of defendant's financial interactions with Dr. Arnoff. Before the hearing, plaintiff moved to compel disclosure of all of defendants' financial dealings with Dr. Arnoff, their medical witness, in order to demonstrate bias connected to his financial relationship with defendants.
Pursuant to Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure, the complaining party must "obtain a ruling upon the party's request, objection or motion" in order to preserve a question for appellate review. Plaintiff has presented no evidence that she ever sought a ruling on her motion, *814 and, therefore, she did not preserve the question for appellate review.
Moreover, although the Commission did not rule on plaintiff's motion, plaintiff cross-examined Dr. Arnoff extensively during his deposition concerning the amount of his fee; the fact that the fee was paid directly to him, and not remitted to a hospital or other third party; and the fact that his independent examinations in workers' compensation cases generally were undertaken on behalf of the defendant, and not the plaintiff. We conclude that, even without a full accounting from Dr. Arnoff, plaintiff could have adequately presented to the Commission any issues associated with Dr. Arnoff's fees, and, thus, that the error, if any, in the Commission's failure to rule on plaintiff's motion was harmless. Accordingly, this assignment of error is overruled.
For the reasons discussed above, the opinion of the Industrial Commission is
Affirmed.
Judges GREENE and BRYANT concur.