VIVIAN S. KNIGHT, Employee, Plaintiff v. ABBOTT LABORATORIES, Employer, SELF-
INSURED (KEMPER RISK MANAGEMENT SERVICES, Servicing Agent),
Defendant

No. COA02-1486

(Filed 7 October 2003)

## 1. Workers' Compensation— injury by accident—verbal confrontation with supervisor

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee did not suffer an injury by accident when she confronted her supervisor about her vacation request in which both parties raised their voices, plaintiff became emotionally upset, and thereafter claimed she suffered psychological problems as a result of the incident, because: (1) plaintiff deliberately initiated the meeting with her supervisor to voice her disagreement with his decision to award the vacation day to another employee, and it was not unexpected that this action would lead to a heated discussion involving raised voices by both individuals; and (2) exposure to an abusive supervisor is a risk shared by any employee in any profession or even outside the workplace in an abusive relationship, and therefore the heated confrontation with plaintiff's supervisor was not so unusual such as to constitute an interruption in the normal work routine.

## 2. Workers' Compensation— verbal confrontation—psychological problems

The Industrial Commission did not err in a workers' compensation case by finding that the greater weight of the evidence shows the verbal confrontation between plaintiff employee and her supervisor did not cause plaintiff's psychological problems, because: (1) the Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony; and (2) the Commission expressly found that the testimony and opinions of defendant's expert that the confrontation did not cause plain-

tiff psychological problems carried greater weight than the testimony of plaintiff's experts based on the fact that defendant's expert performed psychological testing which plaintiff's experts had not done.

**3. Workers' Compensation— evidentiary findings of fact— discretion of Commission**

Although plaintiff employee contends the Industrial Commission erred in a workers' compensation case by failing to make certain evidentiary findings of fact, the Commission chooses what findings to make based on its consideration of the evidence and the Court of Appeals is not at liberty to supplement the Commission's findings.

**4. Workers' Compensation— occupational disease—failure to address issue**

The Industrial Commission erred in a workers' compensation case by failing to address plaintiff employee's occupational disease claim and the case is remanded to the Commission for consideration of this issue.

Appeal by plaintiff from an opinion and award entered 12 July 2002 by the North Carolina Industrial Commission. Heard in the Court of Appeals 27 August 2003.

*Law Offices of George W. Lennon, by George W. Lennon and Michael W. Ballance, for plaintiff-appellant.*

*Brooks, Stevens & Pope, P.A., by Michael C. Sigmon and Matthew P. Blake, for defendant-appellees.*

HUNTER, Judge.

Vivian S. Knight ("plaintiff") appeals from an opinion and award filed 12 July 2002 of the Full Commission of the North Carolina Industrial Commission ("the Commission") denying her workers' compensation benefits for alleged psychological injury resulting from a confrontation with her supervisor. We affirm the portion of the Commission's decision related to plaintiff's injury by accident claim and remand in part for the Commission to rule on plaintiff's occupational disease claim.

Plaintiff was employed by Abbott Laboratories ("defendant") from 1980 to 1994. Only one person from plaintiff's work crew was permitted to take vacation at any one time. On 25 March 1994, after

learning that a co-worker with less seniority had received a vacation day that plaintiff had requested, plaintiff went to the office of her supervisor, Fred Fuller ("Fuller"). Fuller, a large man, became upset when plaintiff asked about her vacation request, rose from his desk, and began talking to plaintiff in a loud, angry voice waving his hands and fingers in plaintiff's face. After the confrontation, in which both parties raised their voices, ended abruptly, plaintiff returned to her workstation in tears. Fuller subsequently approached plaintiff and granted her the vacation day, but plaintiff remained emotionally upset. Since the confrontation, plaintiff is totally disabled and is unable to work.

Following the confrontation, plaintiff had broken out in hives and sought medical attention after her shift ended. Plaintiff was treated by her family doctor, Dr. James Bryant, who referred her to Dr. Soong Lee, a psychiatrist, and Dr. Victor Mallenbaum, a psychologist. Dr. Mallenbaum testified that he was plaintiff's treating psychologist. Following plaintiff's first visit on 27 June 1994, Dr. Mallenbaum diagnosed her with Post Traumatic Stress Disorder and recurrent major depression. Although, plaintiff had a prior history of depression, Dr. Mallenbaum opined that the confrontation caused plaintiff's symptoms or substantially aggravated any pre-existing condition, and that plaintiff was permanently and totally disabled.

Dr. Thomas Gualtieri, a neuropsychiatrist, testified for the defense that he conducted an independent medical examination of plaintiff on 10 August 1994.[1] Dr. Gualtieri began by taking a patient history, which revealed that plaintiff had been involved in an automobile accident in 1993, which potentially caused a brain injury. Plaintiff was unable to recall past incidents of her medical history, but could remember in detail the confrontation with Fuller. She was also unable to complete forms normally given to patients with head injuries. Furthermore, although plaintiff performed poorly on a memory test in which she was required to remember three words in five minutes such as "hat," "river," and "tree," she was able to remember in detail issues surrounding her disability insurance and compensation. Dr. Gualtieri performed physical, neurological, and mental exams. He was, however, not really able to perform tests as plaintiff was not cognitively testable, and would not cooperate with the testing. Dr. Gualtieri concluded that although it was possible plaintiff suffered from any of a number of psychiatric conditions, which could include severe anxiety disorders, somatoform disorders, severe anx-

---

1. Plaintiff stipulated to the expertise of Dr. Gualtieri.

iety or depression, or could even be malingering, in his opinion there was no credible evidence plaintiff suffered from Post Traumatic Stress Disorder. His opinion was based on the lack of a credibly traumatic event, the lack of normal symptoms of Post Traumatic Stress Disorder, and her presentation in his office.

The Commission found "[a]fter reviewing the medical records, the testimony of witnesses[,] and the depositions of medical experts, the Commission gives greater weight to the testimony and opinions of Dr. Gualtieri . . . ." The Commission further found the greater weight of the evidence showed that the 25 March 1994 confrontation did not cause plaintiff's psychological problems, and that the evidence showed plaintiff had initiated the meeting with Fuller and "[t]he confrontation . . . did not constitute an unexpected, unusual[,] or untoward occurrence; nor did it constitute an interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences." Based upon its findings, the Commission concluded that plaintiff did not sustain an injury by accident arising out of the course of her employment and was not entitled to workers' compensation benefits.

The issues are whether: (I) plaintiff suffered an injury by accident; (II) there is sufficient evidence to support the Commission's finding that the confrontation was not the cause of plaintiff's psychological problems; (III) this Court should supplement the Commission's evidentiary findings; and (IV) the Commission erred in failing to address plaintiff's occupational disease theory.

"In reviewing an order and award of the Industrial Commission in a case involving workmen's compensation, [an appellate court] is limited to a determination of (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are supported by the findings." *Barham v. Food World*, 300 N.C. 329, 331, 266 S.E.2d 676, 678 (1980).

I.

**[1]** Plaintiff first contends the Commission erred by concluding that she did not suffer injury by accident. The North Carolina Workers' Compensation Act does not provide for compensation simply for injury, but rather only for " 'injury by accident.' " *Pitillo v. N.C. Dep't of Envtl. Heath & Natural Res.*, 151 N.C. App. 641, 644, 566 S.E.2d 807, 811 (2002) (citation omitted).

An accident under the workers' compensation act has been defined as " 'an unlooked for and untoward event which is not expected or designed by the person who suffers the injury,' " and which involves " 'the interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences.' "

*Id.* at 645, 566 S.E.2d at 811 (quoting *Calderwood v. Charlotte-Mecklenburg Hosp. Auth.*, 135 N.C. App. 112, 115, 519 S.E.2d 61, 63 (1999) (citation omitted)). An injury is not an injury by accident "if the relevant events were 'neither unexpected nor extraordinary,' and it was only the '[claimants'] emotional response to the [events that] was the precipitating factor.' " *Pitillo*, 151 N.C. App. at 645, 566 S.E.2d at 811 (quoting *Cody v. Snider Lumber Co.*, 328 N.C. 67, 71, 399 S.E.2d 104, 106 (1991)).

In *Pitillo*, this Court concluded that a plaintiff who had allegedly suffered a nervous breakdown and stress induced anxiety brought on by a meeting with her supervisor about a performance review was not an injury by accident. *Pitillo*, 151 N.C. App. at 645-46, 566 S.E.2d at 811-12. Determinative in that case were findings of fact that the plaintiff had initiated the meeting, and the meeting was not out of the ordinary and everyone involved was treated courteously. *Id.*

In this case, although plaintiff initiated the meeting with Fuller, she contends his behavior toward her was unexpected and traumatic. The Commission found, however, and the evidence shows that both plaintiff and Fuller raised their voices and both were participants in the argument initiated by plaintiff's complaint that she had improperly been deprived of her desired vacation day. The Commission also recognized that while such confrontations may be infrequent, disagreements between an employee and a supervisor are not uncommon and found that the confrontation between plaintiff and Fuller "did not constitute an interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences." We agree with the Commission's findings. The evidence shows that plaintiff deliberately initiated the meeting with Fuller to voice her disagreement with his decision to award the vacation day to another employee. It is not unexpected that this would lead to a heated discussion involving raised voices on both the part of the supervisor and employee. Furthermore, in an analogous case, our Supreme Court, in an occupational disease claim, by a per curiam decision has indicated that exposure to an abusive supervisor is a risk shared by any employee in any profession or even outside the

workplace in an abusive relationship. *See Woody v. Thomasville Upholstery, Inc.*, 355 N.C. 483, 562 S.E.2d 422 (2002) (*per curiam*) (adopting the dissent in *Woody v. Thomasville Upholstery, Inc.*, 146 N.C. App. 187, 201-02, 552 S.E.2d 202, 211-12 (2001) (Martin, J. dissenting)). Therefore, the heated confrontation with plaintiff's supervisor was not so unusual such as to constitute an interruption in the normal work routine.

As in *Pitillo*, the evidence at most reveals the events themselves did not result in injury, but rather that it was plaintiff's emotional response to the meeting, which she had initiated, that resulted in her psychological harm. *See Pitillo*, 151 N.C. App. at 645-46, 566 S.E.2d at 811. Thus, we conclude the Commission's findings of fact support its conclusion that plaintiff did not suffer a compensable injury by accident.

II.

[2] Plaintiff also challenges the Commission's finding that the greater weight of the evidence shows the confrontation did not cause plaintiff's psychological problems.

" 'The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony.' " *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (citation omitted). As a result, this Court " 'does not have the right to weigh the evidence and decide the issue on the basis of its weight. . . .' " *Id.* at 681, 509 S.E.2d at 414 (citation omitted). Instead, this Court must only determine whether there is any evidence tending to support the Commission's finding of fact. *Id.*

The Commission expressly found that the testimony and opinions of defendant's expert, Dr. Gualtieri, carried greater weight than the testimony of plaintiff's experts, in particular because he performed psychological testing, which plaintiff's experts had not done. The Commission then went on to find that the evidence of record showed the confrontation between plaintiff and her supervisor did not cause plaintiff's psychological problems. Dr. Gualtieri testified that based on his evaluation of plaintiff he found no credible evidence of Post Traumatic Stress Disorder related to the confrontation. This opinion was grounded in a lack of what he termed a "credibly traumatic" event, symptoms inconsistent with Post Traumatic Stress Disorder, and her presentation in his office. He also testified that a subsequent review of her medical records did not change his initial evaluation. Dr. Gualtieri indicated that a number of other "stressors" existed in

plaintiff's life that would contribute to psychological problems. He did conclude that plaintiff may suffer from one of a number of other psychological conditions, but those would have pre-existed the confrontation with Fuller and would not have been caused by it. Furthermore, he stated that aggravation of a pre-existing psychological condition as a rule resulted in only a temporary exacerbation of the previous psychological condition and would not lead to total and permanent disability. Thus, the record in this case contains evidence to support a finding that the confrontation between plaintiff and Fuller was not the cause of her psychological conditions.

## III.

[3] Plaintiff further argues that the Commission erred by not making certain evidentiary findings of fact. However, " '[t]he Commission chooses what findings to make based on its consideration of the evidence[, and this] [C]ourt is not at liberty to supplement the Commission's findings[.]' " *Pitillo*, 151 N.C. App. at 644, 566 S.E.2d at 810 (quoting *Bailey v. Sears Roebuck & Co.*, 131 N.C. App. 649, 653, 508 S.E.2d 831, 834 (1998)). Thus, we decline to review this assignment of error.

## IV.

[4] Plaintiff finally contends the Commission erred by failing to address her occupational disease claim. We agree.

"[W]hen [a] matter is 'appealed' to the full Commission . . . , it is the duty and responsibility of the full Commission to decide all of the matters in controversy between the parties." *Vieregge v. N.C. State University*, 105 N.C. App. 633, 638, 414 S.E.2d 771, 774 (1992). In this case, the parties agree that plaintiff alleged she suffered from an occupational disease and the Commission failed to address this allegation.[2] Accordingly, we must remand this case to the Commission for consideration of plaintiff's occupational disease claim.

Affirmed in part, remanded in part.

Judges TIMMONS-GOODSON and ELMORE concur.

---

2. All three members on the panel of the Commission cited *Woody*, an occupational disease case, in their respective opinions but did so only in the context of plaintiff's injury by accident claim, and did not specifically apply *Woody* to plaintiff's separate occupational disease claim.