* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. On December 15, 2005, an employment relationship existed between plaintiff and defendant-employer. The employment relationship was terminated on December 15, 2005, and plaintiff alleges that an injury by accident occurred on that date. 2. Plaintiff's average weekly wage was $1,335.00, yielding a compensation rate of $890.45. This amount exceeds the maximum weekly benefit for 2005, yielding the maximum compensation rate of $704.00.
3. The parties stipulated to all of the Industrial Commission Forms which have been filed with the Commission.
4. The parties additionally stipulated to the following exhibits at the Deputy Commissioner's hearing:
 a. Defendant-employer's personnel policy
 b. April 4, 2005 minutes of the Mayor and City Council meeting
 c. Letter to plaintiff from defendant dated December 15, 2005
 d. Letter to plaintiff from defendant dated December 16, 2005
 e. Return receipt for December 16, 2005 letter
 f. Statement of co-employees memorializing meeting between plaintiff and said co-employees
 g. Resume of plaintiff
5. The issues to be determined by the Full Commission are whether plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer on December 15, 2005, and, if so, what benefits, if any, plaintiff is entitled to receive; and, whether plaintiff is pursuing a frivolous claim, and if so, what penalties are due defendant-employer. *Page 3 
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. On Monday, December 12, 2005, plaintiff received an unsolicited telephone call from Demetrius Sykes, advising him that defendant's City Manager, Joseph Huffman, was trying to get rid of him as Human Resources Director. As plaintiff was already scheduled to meet with Mr. Huffman on other issues on that date, he approached Mr. Huffman and asked him if the rumor was true. Plaintiff and Mr. Huffman scheduled a meeting for later that day to address the issue.
2. Later that afternoon, plaintiff met with Mr. Huffman and the Assistant City Manager, Tasha Logan. During that meeting, Mr. Huffman told plaintiff that he was not pleased with plaintiff's leadership performance as a manager and that plaintiff was having difficulty learning the organization of leadership. Mr. Huffman agreed to give plaintiff his concerns in writing. Mr. Huffman advised plaintiff that he was not being terminated and they discussed a work plan. Mr. Huffman and plaintiff agreed that the issues would be re-examined at the end of January 2006.
3. On December 13, 2005, plaintiff called a meeting with his staff in the human resources department, which included Vincent W. Bobrowski, Kevin J. Adkins, Julie Michel Perkins, and Veloris A. Allen. In that meeting, plaintiff stated that Mr. Huffman was not happy with the performance of the human resources department and then, in succession, as he looked and pointed at each of the staff members, plaintiff said that each of them were going to be terminated. Plaintiff pointed at each person and stated, "that means you, you, you and you and *Page 4 
then me." Plaintiff told each of the staff members that the meeting was confidential. He further stated that if he was fired, it was "not going to be pretty."
4. Within a day of the meeting, the human resources staff members prepared and signed a statement that outlined what occurred during the meeting because the staff members were concerned about their jobs and plaintiff's comments to them in the meeting.
5. Later on in the afternoon, but prior to the normal end of the workday, plaintiff left work early and went home. Plaintiff did not report to work on Wednesday, December 14, 2005.
6. On the morning of December 14, 2005, Mr. Huffman heard a rumor that the human resources department staff had been told they were terminated. He dismissed the rumor until he went down to the human resources department and met with Mr. Bobrowski, Mr. Adkins, Ms. Perkins, and Ms. Allen. They confirmed that the day before, plaintiff called a meeting and told each of them that Mr. Huffman was not pleased with their performance and that they were each being terminated.
7. Mr. Huffman then called plaintiff at home and asked him whether or not the meeting had occurred and whether he had told his staff members that they were being terminated. Plaintiff denied telling them that they were being terminated.
8. Mr. Huffman was concerned that plaintiff, a key department head, was not being honest with him and that plaintiff was trying to fire the entire human resources department. Mr. Huffman decided that he would again ask plaintiff the next morning, December 15, 2005, about the meeting and what plaintiff had discussed with his staff. Mr. Huffman felt that if plaintiff was untruthful again about the meeting and failed to conduct himself properly, then plaintiff's conduct was not becoming a city employee, for which he could be terminated. *Page 5 
9. On December 15, 2005, Mr. Huffman, in the presence of Ms. Logan, met with plaintiff and asked him again whether he told his staff that they were going to be terminated. Plaintiff again denied telling his staff they were all going to be terminated and Mr. Huffman offered plaintiff the opportunity to resign. Plaintiff refused to resign and Mr. Huffman terminated plaintiff for conduct unbecoming a city employee.
10. On December 20, 2005, plaintiff saw Dr. Susheel V. Atree, an internist, for concerns about stress, difficulty sleeping, gastrointestinal problems and headaches. After plaintiff's psychologists diagnosed plaintiff with post-traumatic stress disorder (PTSD), Dr. Atree agreed with the diagnosis. Dr. Atree testified to a reasonable degree of medical certainty that plaintiff's symptoms of anxiety and depression stemmed from his termination from his employment.
11. On December 27, 2005, plaintiff presented to psychologist O. Martin Pharr, Ph.D. Dr. Pharr diagnosed plaintiff with PTSD and testified that by deduction, there seemed to be a proximal relationship between plaintiff's termination and the onset of his symptoms.
12. On March 29 and April 16, 2007, plaintiff saw Paul R. Krasner, Ph.D., who is a psychologist. Dr. Krasner's impression was that plaintiff was suffering from PTSD based upon his review of the medical records and plaintiff's presentation on March 29, 2007. Dr. Krasner also opined that the cause of plaintiff's PTSD was his termination from his employment with defendant.
13. Defendant's personnel policy allows for the immediate termination of a city employee if, in the opinion of the City Manager, that employee engaged in conduct that was unbecoming a city employee. Mr. Huffman testified that because plaintiff told each human *Page 6 
resources staff member that they were being terminated from their position and twice denied to him that he did so, plaintiff was terminated in accordance with the personnel policy.
14. As plaintiff assisted in the re-writing of the personnel policy and played a leadership role in putting the policy together, he knew or should have known that he could be terminated for conduct unbecoming a city employee.
15. Mr. Huffman made the decision to terminate plaintiff on the basis that plaintiff's conduct violated defendant's personnel policy, notwithstanding the fact that plaintiff was an at-will employee and could be terminated without cause.
16. Defendant's personnel policy manual was part of the normal work routine and established sequence of operations for defendant.
17. Based upon the evidence of record, the Commission finds that plaintiff's actions violated the personnel policy of defendant by engaging in conduct unbecoming a city employee. The termination of plaintiff from his position as Human Resources Director by the City Manager was a legitimate personnel action and was performed as a part of the normal work routine and pursuant to established sequences of operations.
18. The Commission further finds that because plaintiff called the meeting with his staff members, told each that they were going to be terminated, and subsequently denied the event to the City Manager twice, Mr. Huffman had hiring and firing authority and plaintiff's termination was neither an untoward occurrence nor an unexpected occurrence. Any reasonable person would expect to be terminated from a position such as that of plaintiff under the same or similar circumstances.
19. The meetings on December 12 and 15, 2005 between plaintiff and Mr. Huffman related to the conduct of plaintiff in his position as Human Resources Director, and, as such, *Page 7 
were part of the normal work routine and were normal incidences of employment. The events surrounding the meetings with Mr. Huffman and plaintiff's termination were cordial, respectful and non-eventful.
20. The Commission finds that plaintiff did not sustain any injury as a result of the meeting with Mr. Huffman on December 12, 2005. Plaintiff testified that his symptoms began on December 12, 2005 after the meeting with Mr. Huffman when he was told he was not being terminated, and that they worsened on December 13, 2005 when he left to go home early. As of December 13, 2005, however, plaintiff had not been terminated from his position and had not been told he was being fired.
21. Plaintiff testified that his symptoms worsened after he was terminated. However, the Commission finds that the symptoms of anxiety, depression and stress plaintiff experienced after being terminated from his employment are not unusual.
22. Plaintiff's prosecution of this claim was not without reasonable grounds.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers" Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6). An "accident" is an unlooked for and untoward event that was not expected or designed by the injured employee and the result of which was produced by a fortuitous cause. Harding v. Thomas Howard Co., 256 N.C. 427,124 S.E.2d 109 (1962). *Page 8 
2. In the present case, plaintiff's termination from his position as Human Resources Director was not an unlooked for and untoward event that was not expected or designed by the injured employee and the result of which was produced by a fortuitous cause. Harding v. Thomas HowardCo., supra. Plaintiff's termination was a legitimate personnel action and was therefore an ordinary incident of employment within the normal work routine. See Pitillo v. N.C. Dept. of Environmental Health andNatural Resources, 151 N.C. App. 641, 566 S.E.2d 807 (2002).
3. Therefore, plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
4. Plaintiff did not prosecute this claim without reasonable grounds and, therefore, defendant is not entitled to attorney fees pursuant to N.C. Gen. Stat. § 97-88.1. Sparks v. Mountain Breeze Restaurant,55 N.C. App. 663, 286 S.E.2d 575 (1982).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for benefits under the Workers' Compensation Act is HEREBY DENIED.
2. Each side shall pay its own costs, except defendant shall pay an expert witness fee of $150.00 to Dr. Krasner, $385.00 to Dr. Pharr, and $545.00 to Dr. Atree, if not already paid by prior order.
This 17th day of June, 2008. *Page 9 
 S/___________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1