***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor. The parties have shown good grounds to reconsider the evidence. The Full Commission hereby REVERSES IN PART AND AFFIRMS IN PART the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. Employee is Charles McCollum.
2. Employer is Atlas Van Lines.
3. The carrier on the risk is Legion Insurance Company, and this claim is administered by Gallagher Bassett Services, Inc.
4. An employee-employer relationship existed at all relevant times.
5. Plaintiff's average weekly wage is $900.00, yielding a weekly compensation rate of $560.00.
6. The date of the alleged injury by accident is August 18, 1999.
7. Defendant-employer regularly employs three or more employees, and all parties are bound by the North Carolina Workers' Compensation Act.
8. The parties have stipulated the following into evidence without need for further authentication or verification:
a) Industrial Commission forms and documents;
b) Medical records of employee/plaintiff;
c) Colorado accident report;
d) Photographs;
e) Miscellaneous documents from Defendants' Response to Discovery;
f) US Department of the Geological Survey-Loveland Pass quadrangle;
g) US Department of the Geological Survey-Wilcott quadrangle;
h) Rand McNally Road Atlas, 1999-Pages 20 and 21;
i) Federal Motor Carrier Safety Regulations-Pages 193-251;
j) Previous medical records of plaintiff;
k) Articles; and
 l) Application for Qualification (2 forms) 49CFR, accident report, amended Form 33R.
9. The issues before the Commission are whether plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer ; whether plaintiff is permanently and totally disabled due to his injuries; and whether plaintiff's claim should be denied because plaintiff allegedly provided false statements to his employer regarding his health condition.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner hearing, plaintiff was a 59 year old male, born January 24, 1942. Plaintiff completed the eighth grade and can read and write. Plaintiff was a long-distance truck driver for 37 years.
2. Plaintiff has a history of smoking at least a pack of cigarettes a day and a family history of heart disease. In 1981, plaintiff suffered a myocardial infarction, acute and total occlusion of the right pulmonary artery. Plaintiff recovered and returned to long-distance truck driving until December 1997 when he was hospitalized with congestive heart failure. Following plaintiff's release from the hospital, Dr. Teresa Romzick, plaintiff's family doctor, found plaintiff's congestive heart disease was stable and that he had recovered sufficiently to operate a tractor-trailer. On January 5, 1998 Dr. Romzick released plaintiff to return to his full duties as a long-distance truck driver but restricted him from any heavy loading. Plaintiff returned to driving a truck back and forth across the country for nineteen months until the accident which is the subject of this claim.
3. In August 1999, plaintiff was employed by Tru-Pak, a North Carolina trucking company. Tru-Pak leased its drivers and trucks to defendant, Atlas Van Lines. Tru-Pak maintained supervision and control over its drivers and paid them based on miles driven. Atlas Van Lines provided the trailers and loads. Plaintiff received his instructions regarding pick up, deliveries and set time of delivery from Tru-Pak dispatchers. By contract, Tru-Pak was an agent of Atlas Van Lines, and Atlas Van Lines provided the workers' compensation coverage for Tru-Pak drivers.
4. As a driver, plaintiff was assigned to one truck and he was the only person who drove it. Plaintiff switched trailers periodically wherever he was sent. Plaintiff frequently went on hauling trips that lasted for more than a month. Plaintiff's long-haul trips took him over the Rocky Mountains an average of six times per year. Plaintiff, like other drivers for Tru-Pak, was required to drive for longer hours than that permitted by the Federal Motor Carrier Safety Code in order to make timely deliveries.
5. On August 18, 1999, plaintiff was hauling a load for defendant-employer through Colorado. On that date, plaintiff drove through Denver, Colorado and proceeded on to I-70, which took him into the Rocky Mountains. As was normal for plaintiff's job, he had been driving for approximately 23 days and had made several different stops within the past few days. Plaintiff testified that he was tired. He had only had four hours of sleep in the previous twenty-four hours of driving. As plaintiff traveled along I-70 he reached an altitude of 12,517 feet. He then began the descent and at an altitude of approximately 7,000 feet, plaintiff lost consciousness and his truck went off the road. When plaintiff regained consciousness, his 18-wheeler was going down the mountainside. The wheels on plaintiff's tractor-trailer were torn off and the truck continued to slide until coming to an abrupt stop. At that time, plaintiff's left chest struck the steering wheel and bent it.
6. When the truck stopped, plaintiff got out and sat down. He had a knot on his head and his left chest felt bruised. At the time the paramedics arrived, plaintiff was found to be in atrial fibrillation. Plaintiff's atrial fibrillation resolved itself naturally. Plaintiff was then transported to Vail Valley Medical Center. At that time, plaintiff was found to have sinus tachycardia which is a fast normal heartbeat.
7. Plaintiff was transferred from Vail Valley Medical Center to St. Luke's Medical Center in Denver for further treatment, including cardiac catheterization and study. At St. Luke's, plaintiff came under the care of Dr. Mark D. Landers, a doctor who is certified in cardiology and electrophysiology. Dr. Landers diagnosed plaintiff with ventricular tachycardia. Dr. Landers felt after the accident that plaintiff was at risk for sudden cardiac death, due to his pre-syncopal symptoms associated with his non-sustained ventricular tachycardia, and implanted a single chamber cardioverter defibrillator. Dr. Landers stated in his deposition that but for this accident and plaintiff's resulting symptoms, he would not have implanted a cardioverter defibrillator.
8. Dr. Landers is of the opinion that plaintiff's ventricular tachycardia may have caused the accident, but he also stated that fatigue, and driving at high altitudes could have been contributing factors in plaintiff's loss of consciousness. Dr. Landers explained further that the loss of consciousness caused the further investigation into plaintiff's condition, which resulted in the installation of the defibrillator. Plaintiff experienced no episodes of blackout prior to this accident. Dr. Landers felt that plaintiff was at an increased risk of syncope crossing the Rocky Mountains and that high altitude certainly was a contributing factor in the syncope episode.
9. In his deposition Dr. Landers stated his opinion that plaintiff's heart condition was temporarily exacerbated by the injury by accident, but he was unable to state with certainty that no permanent damage was done to plaintiff's heart condition as a result of the accident. Dr, Landers also was unable to state with any certainty that plaintiff would have needed a defibrillator even if the accident had not occurred and felt that but for the accident and resulting symptoms, he would not have put in the defibrillator. Dr. Landers stated that the surgeries and medical treatment that followed were all interrelated.
10. Dr. Landers felt that in August 1999 plaintiff was totally disabled from truck driving and that plaintiff would most likely need ongoing medical treatment.
11. Plaintiff returned to North Carolina and began treatment by Dr. Jose Eusebio, a board-certified cardiologist. Dr. Eusebio diagnosed severe congestive heart failure caused by ischemic cardiomyopathy due to coronary artery disease. After plaintiff's return to North Carolina, Dr. Eusebio determined that plaintiff needed an implantable dual chamber cardioverter defibrillator and implanted this device.
12. Dr. Eusebio placed plaintiff on the heart transplant list. Dr. Eusebio believed that plaintiff has been disabled since his August 18, 1999 motor vehicle accident and will not ever be able to return to work truck driving. Dr. Eusebio is further of the opinion that plaintiff will continue to need medical treatment throughout his life.
13. Dr. Eusebio felt that fatigue and altitude alone might have explained the loss of consciousness since plaintiff had been driving 20 out of the last 24 hours. Dr. Eusebio attributed the cause of the accident to irregular heartbeat, driver fatigue and high altitude. Dr. Eusebio stated that the accident might have been "the straw that broke the camel's back." Further, he stated that there was not one cause of the accident, but more a combination of all factors that played together and caused a worsening of plaintiff's heart condition.
14. In response to a question from defense counsel concerning how the accident on August 18, 1999 might have exacerbated plaintiff's cardiovascular disease, Dr. Eusebio stated: "Frequently these patients who are in what we call compensated congestive heart failure are so delicately balanced that a small insult can tip them over and make them suddenly deteriorate, in which case Mr. McCollum [plaintiff] literally went downhill in his truck."
15. Dr. Eusebio also causally related the implantation of the defibrillators to the accident, stating that many patients with hearts as bad as plaintiff's do not have or need defibrillators and unless a patient has symptoms such as plaintiff experienced after the accident, physicians do not normally perform tests and implant defibrillators. Dr. Eusebio stated: "I don't think that the accident necessarily caused him to have bypass surgery or the defibrillator, but it may have altered the balance of things that eventually made things bad enough that he needed all of these treatments." Plaintiff's cardiac condition significantly deteriorated after the accident, and to a reasonable degree of medical certainty, Dr. Eusebio testified that the accident may have worsened the cardiac condition.
16. Defendant-employer contended that plaintiff failed to provide information regarding his congestive heart failure and, as such, plaintiff is precluded from recovering compensation benefits from defendant-employer. However, Tru-Pak had actual knowledge of plaintiff's pre-existing cardiovascular disease, including plaintiff's hospitalization in December 1997 for congestive heart failure, and such knowledge is imputed to Atlas Van Lines. In addition, Dr. Robert Hart, who performed plaintiff's Department of Transportation physical on April 15, 1997, indicated that considering plaintiff's physical results, it would not have made any difference whether or not he had known of plaintiff's 1981 myocardial infarction in certifying him as being physically fit to operate a commercial tractor trailer on that date. Defendant-employer knew plaintiff was driving longer hours than allowed by DOT regulations and that he was driving by himself.
17. On August 18, 1999, plaintiff was performing his regular job but not under his normal working conditions. On that date, as a result of the combination of plaintiff's pre-existing congestive heart failure, fatigue, and the high altitude, plaintiff experienced a syncope event while driving in a place it was unusual for him to drive. Driving at that altitude cannot be considered a part of plaintiff's regular job duties, as the trip was made only an average of six times a year. Plaintiff's employment as a commercial truck driver placed him at risk of driving at high altitudes and driving such long hours that he became exhausted and fatigued. Both conditions were sufficient to cause plaintiff's loss of consciousness.
18. The injuries plaintiff sustained as a result of the injury by accident on August 18, 1999 aggravated or exacerbated his preexisting heart condition to the extent that it necessitated the implantation of a defibrillator in Denver and the subsequent treatment, surgeries and implantation of an additional defibrillator pacemaker.
19. As the result of the injury by accident on August 18, 1999 plaintiff has been and remains totally disabled from his regular job or any other employment.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to be compensable under the Workers' Compensation Act, an injury by accident must arise out of and in the course of employment. N.C. Gen. Stat. § 97-2(6). In the case at hand, it is undisputed that plaintiff sustained an injury by accident when his truck ran off the road and down the mountainside. There is also no dispute that the accident occurred in the course of employment, because it occurred during working hours and while plaintiff was engaged in the performance of his duties.See, Taylor v. Twin City Club, 260 N.C. 435, 132 S.E.2d 865 (1963).
2. Defendants argue that the accident did not arise out of plaintiff's employment because it was caused solely by his preexisting heart condition. However, the greater weight of the medical evidence shows that plaintiff's loss of consciousness and resulting accident were caused by a combination of plaintiff's preexisting heart condition, extreme fatigue and the altitude at which plaintiff was driving. Therefore, on August 18, 1999, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. See, Rackley v.Coastal Painting, ___ N.C. App. ___, 570 S.E.2d 121 (2002); Pressley v.Southwestern Freight Lines, 144 N.C. App. 342, 551 S.E.2d 118 (2001).
3. As the result of the compensable injury by accident, plaintiff is entitled to permanent total disability compensation at the rate of $560.00 per week beginning August 18, 1999 and continuing for the remainder of plaintiff's lifetime or until further order of the Commission. N.C. Gen. Stat. § 97-29.
4. As the result of the compensable injury by accident, plaintiff is entitled to have defendants pay for all medical treatment which tends to effect a cure, give relief or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
5. Plaintiff's entitlement to compensation benefits is not barred by any failure to disclose to defendant-employer information regarding his preexisting heart condition.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney fees hereinafter approved, defendants shall pay plaintiff permanent total disability compensation in the amount of $560.00 per week from August 18, 1999 and continuing for plaintiff's lifetime or until further order of the Commission. All sums that have accrued shall be paid in one lump sum.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury by accident.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation benefits due plaintiff is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel. All attorney's fees due on accrued compensation shall be paid in one lump sum.
4. Defendants shall pay the costs of this action, including all expert witness fees.
This the ___ day of January 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER