***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen, and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration the Full Commission affirms in part and modifies in part the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The date of the alleged injury which is the subject of this claim is August 17, 2005. *Page 2 
2. On such date, the parties hereto were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On such date, an employment relationship existed between plaintiff and defendant-employer.
4. On such date, defendant-employer employed three (3) or more employees.
5. As of such date, the carrier of workers' compensation insurance in North Carolina for defendant-employer was American Home Assurance Company.
6. Plaintiff's average weekly wage is $656.25, resulting in a workers' compensation rate of $437.52.
7. The parties participated in a mediated settlement conference on March 18, 2010. Defendants have paid the entire mediation fee in the amount of $1,746.25. Pursuant to Rule 7(c) of the Rules for Mediated Settlement and Neutral Evaluation Conferences of the North Carolina Industrial Commission, defendants contend they are entitled to seek a credit in the amount of $873.12 for payment of plaintiff's share of the mediation costs, and if approved, defendants may withhold funds from any award for this purpose. Plaintiff does not stipulate to this credit, rather, the North Carolina Industrial Commission may order this in its discretion.
8. All parties are properly before the North Carolina Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter.
9. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
 ***********
The following was entered into evidence as a:
 STIPULATED EXHIBIT *Page 3 
A group of documents including the Pretrial Agreement, plaintiff's medical records, and the Industrial Commission Forms filed in this matter, collectively paginated 1-275 and marked as stipulated exhibit 1.
 *********** ISSUES PRESENTED
1. To what workers' compensation benefits and/or medical treatment is plaintiff entitled as a result of the incident that took place on August 17, 2005?
2. Is plaintiff permanently and totally disabled?
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 45 years old, having a date of birth of June 8, 1965. Plaintiff had a troubled childhood and suffered some psychological issues prior to August 17, 2005. However, plaintiff was able to work a full-time job without restrictions despite that history. Prior to August 17, 2005, plaintiff was always able to work and had, over time, assumed increasing responsibility in her employment. Plaintiff's employment prior to her employment with defendant-employer required her to handle money and interact with members of the public.
2. Plaintiff began working for defendant-employer around 1996 as the manager of a check-cashing/loan franchise. In her capacity as manager, plaintiff was responsible for opening and closing the store, handling money, performing accounting tasks, and hiring and training employees. *Page 4 
3. On August 17, 2005, plaintiff was working at one of defendant-employer's stores in Raleigh, North Carolina, when two individuals entered the store and instructed plaintiff and her two co-workers to move to the back of the store and lie down on the floor. One of the individuals brandished an AK-47 firearm. Neither of the robbers wore a mask to conceal their faces, which lead plaintiff to believe that she would be killed. Following the robbery, the perpetrators fled the store, taking with them plaintiff's purse which contained items identifying plaintiff.
4. Although plaintiff was not shot by the robbers as she feared she would be, she suffered mental injuries as the result of the incident.
5. Plaintiff was a witness to another robbery involving a firearm prior to the August 17, 2005 incident while working for defendant-employer at a different store location in Raleigh. Plaintiff returned to work the next day, and did not miss any work as the result of that robbery.
6. Following the August 17, 2005 incident, plaintiff went home and immediately called defendant-employer's human resources department. Plaintiff was instructed to find a physician to treat with on her own, and she subsequently began treating with Dr. Lisa Osvold.
7. On August 31, 2005, Dr. Osvold wrote a certification for the U.S. Department of Labor which provides:
 Ms. Mays meets the criteria for PTSD, including having experienced a life-threatening event, reexperiencing the event, with reactions of anxiety, panic, [and] paranoia, [and] extreme emotional distress, wanting to avoid where the event occurred, isolating, diminished interest or activities, difficulty sleeping, hypervigilance, exaggerated startle response, crying, anger, loss of appetite.
Later in the report Dr. Osvold opined with respect to plaintiff, "She cannot currently work at all." *Page 5 
8. In July 2006, plaintiff left Raleigh, where she was constantly reminded of the August 17, 2005 robbery, and moved back to rural New York, where she had lived as a teenager. This move has proven beneficial to plaintiff's psychological condition.
9. On August 1, 2006, plaintiff began treating with psychologist Dr. David Shumsky in Fishkill, New York. Dr. Shumsky's medical note from plaintiff's first visit reads in part, ". . . I agree with the previous diagnosis of Post Traumatic Stress Disorder and add the diagnosis of Adjustment Disorder with Depressed Mood."
10. On August 16, 2006, plaintiff began treating with psychiatrist Dr. Paul David Schefflein, who was selected by defendants. Dr. Schefflein also diagnosed plaintiff with Post Traumatic Stress Disorder and recommended that plaintiff see a therapist and prescribed the medications Klonopin, Ambien and Effexor.
11. On December 28, 2007, plaintiff underwent a labor market survey recommended by Dr. Shumsky. In his report dated December 28, 2007, case manager Darren K. Flomberg noted that Dr. Shumsky felt plaintiff should either be enrolled in vocational retraining or actively seeking employment. Mr. Flomberg conducted a survey of plaintiff's local labor market to identify available jobs. This labor market survey determined that plaintiff had several transferrable skills and identified several suitable job opportunities which met plaintiff's restrictions.
12. On August 28, 2008, plaintiff underwent an Independent Neuropsychological Examination conducted by Dr. Richard DeBenedetto. Dr. DeBenedetto's report indicates that plaintiff's "symptoms of a low level depressive disorder and associated cognitive deficits are causally related to the trauma associated with the incident of 8/17/05." Regarding disability, Dr. DeBenedetto opined, "There is sufficient evidence to suggest the presence of a causally-related `mild' and `temporary' neuropsychological disability." *Page 6 
13. Dr. Shumsky was deposed following the hearing before the Deputy Commissioner. Dr. Shumsky testified that plaintiff's psychological problems were caused by the August 17, 2005 work related incident. While Dr. Shumsky indicated, "It's my opinion that [plaintiff] is not able to return to work in any capacity," he also indicated that he was hopeful that plaintiff would continue to improve and that he thought it would be "very healthy for her to return to work."
14. Dr. Schefflein was also deposed following the hearing before the Deputy Commissioner. He testified that plaintiff's psychological problems were caused by the August 17, 2005 incident at her work. When asked about plaintiff's ability to work on direct examination, Dr. Schefflein responded, "I don't think she can go back, but I would also defer to Dr. Shumsky." On cross examination, however, Dr. Shefflein indicated that it might be possible for plaintiff to return to work if she could work from her home.
15. Plaintiff suffers shaking and sweating episodes, anxiety, and panic attacks in public. Plaintiff does not feel that she can work, citing, among other things, her belief that she could not "give one hundred percent," and her concern that she does not trust anyone and, therefore, could not work with the public.
16. Defendants filed a Form 60 dated January 20, 2009 admitting the compensability of plaintiff's psychological injuries resulting from the August 17, 2005 robbery. The Form 60 reflected the payment of temporary total disability benefits to plaintiff.
17. The Full Commission finds, based on the greater weight of the evidence, that the August 17, 2005 robbery occurring at defendant-employer's store where plaintiff was working constituted an interruption of plaintiff's normal work routine and the introduction thereby of conditions likely to result in unexpected consequences. *Page 7 
18. The greater weight of the competent, credible evidence establishes that plaintiff's psychological problems were caused, aggravated, or accelerated by the August 17, 2005 accident.
19. Based on the greater weight of the competent evidence, the Full Commission finds that plaintiff has not met her burden of proof to support a finding that she is permanently and totally disabled.
20. The Full Commission finds that vocational rehabilitation would be appropriate to help locate employment for plaintiff within her restrictions.
21. The greater weight of the competent, credible evidence establishes that the psychological treatment plaintiff received following the August 17, 2005 admittedly compensable accident was reasonable and medically necessary, and was reasonably calculated to effect a cure and give relief from plaintiff's compensable injury.
22. Given the circumstances of this case, Drs. Shumsky and Schefflein are designated as the authorized treating physicians who will provide and/or direct plaintiff's psychological care.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On August 17, 2005, plaintiff suffered a compensable injury by accident arising out of and in the course of her employment with defendant-employer when the store she was working at was robbed by assailants wielding a firearm. This incident constituted an interruption of plaintiff's normal work routine and the introduction thereby of conditions likely to result in unexpected consequences. Furthermore, the robbery was an unlooked for and untoward event *Page 8 
that was not expected or designed by plaintiff. N.C. Gen. Stat. § 97-2(6); Harding v.Thomas Howard Co., 256 N.C. 427 (1962).
2. A mental injury by accident can be compensable under the Workers' Compensation Act if it results from an "injury by accident" using the same definition of that term as is used for a physical injury under N.C. Gen. Stat. § 97-2(6). Bursell v. GeneralElectric Company, 172 N.C. App. 73, 616 S.E.2d 342 (2005);Jordan v. Central Piedmont Community College,124 N.C. App. 112, 476 S.E.2d 410 (1996). In this case, plaintiff has proven by the greater weight of the evidence that her psychological problems were caused or aggravated by the August 17, 2005 admittedly compensable workplace injury by accident. N.C. Gen. Stat. § 97-2(6); Knight v. AbbottLabratories, 160 N.C. App. 542, 586 S.E.2d 544 (2003);Pittillo v. N.C. Department of Environmental Health NaturalResources, 151 N.C. App. 641, 566 S.E.2d 807 (2002).
3. Plaintiff has the burden of proving disability. Sims v.Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277, disc. review denied,353 N.C. 729, 550 S.E.2d 782 (2001). In order to meet this burden of proof, a plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., *Page 9 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms., Inc., supra.
4. In the instant case, the medical evidence shows that, due to her disability resulting from the August 17, 2005 incident, plaintiff is incapable of work in any employment at the present time. Therefore, plaintiff is entitled to temporary total disability compensation at the rate of $437.52 per week for the period from August 18, 2005 and continuing until plaintiff returns to work or further order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowes Prod.Distribution, supra.
5. In order to be found permanently and totally disabled under the Act, a plaintiff must produce competent medical evidence that she is not able to perform gainful employment of any kind. Demery v.Perdue Farms, Inc., supra. The evidence in this case does not establish that plaintiff is permanently and totally disabled.Id.
6. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendants provide any past and future psychiatric treatment related to her August 17, 2005 compensable accident when bills for the same have been approved pursuant to Industrial Commission Procedures. N.C. Gen. Stat. § 97-25; Workman v. RutherfordElectric Membership Corp., 170 N.C. App. 481 (2005); Toler v.Black and Decker, 134 N.C. App. 695 (1999).
7. Regarding plaintiff's psychological treatment, the North Carolina Workers' Compensation Act gives the Industrial Commission the power to "order such further [medical] treatments as may in the discretion of the Commission be necessary," with the cost to be borne by *Page 10 
defendants. Furthermore, the Industrial Commission may "at any time . . . order a change in treatment and designate other treatment suggested by the injured employee. . . ." N.C. Gen. Stat. § 97-25. Given the circumstances of this case, Drs. Shumsky and Schefflein are designated as the authorized treating physicians who will provide and/or direct plaintiff's psychological care.
8. Plaintiff is entitled to have defendants provide vocational rehabilitation in order to return plaintiff to suitable employment. N.C. Gen. Stat. § 97-25.
9. Pursuant to Rule 7(c) of the Rules for Mediated Settlement and Neutral Evaluation Conferences of the North Carolina Industrial Commission, defendants are entitled to seek a credit in the amount of $873.12 for payment of plaintiff's share of the mediation costs. Defendants have paid the entire mediation fee in the amount of $1,746.25 and are entitled to a credit in the amount of $873.12.
 ***********
Based on the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at a rate of $437.52 per week for the period from August 18, 2005 and continuing until plaintiff returns to work or further order of the Commission so long as plaintiff is compliant with any vocational rehabilitation efforts provided by defendants. The amount that has accrued shall be paid in a lump sum. This award is subject to the attorney's fee approved below.
2. Plaintiff is hereby ordered to comply with any vocational rehabilitation efforts provided by defendants. *Page 11 
3. Pursuant to Rule 7(c) of the Rules for Mediated Settlement and Neutral Evaluation Conferences of the North Carolina Industrial Commission, defendants are entitled to reimbursement from plaintiff for her share of the mediation fee, an amount equal to $873.12.
4. Defendants shall pay all psychological treatment expenses incurred or to be incurred as a result of the August 17, 2005 compensable accident when bills for the same have been approved pursuant to Industrial Commission procedures, subject to the provisions of N.C. Gen. Stat. § 97-25.1. Going forward, Drs. Shumsky and Schefflein are designated as plaintiff's authorized treating physicians for her psychological condition.
5. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent of any lump sum due plaintiff shall be deducted and paid directly to plaintiff's counsel. Thereafter, plaintiff's attorney shall receive every fourth compensation check due plaintiff.
6. Defendants shall bear the costs.
This the ___ day of April, 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/_____________ STACI T. MEYER COMMISSIONER *Page 12 
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER *Page 1