ALLEN GRAY, Employee, Plaintiff v. RDU AIRPORT AUTHORITY, Employer, TRAVELERS INSURANCE COMPANY, Carrier, Defendants

No. COA09-1282

(Filed 20 April 2010)

**Workers' Compensation— injury by accident—Achilles tendon injury—no unusual or unforeseen circumstances**

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff's Achilles tendon injury was not a compensable injury by accident. There were no unusual or unforeseen circumstances that interrupted plaintiff's work routine.

Appeal by plaintiff from opinion and award entered 16 July 2009 by the North Carolina Industrial Commission. Heard in the Court of Appeals 24 February 2010.

*Scudder & Hedrick, PLLC, by John A. Hedrick, for plaintiff-appellant.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Jennifer S. Jerzak, for defendants-appellees.*

HUNTER, Robert C., Judge.

Plaintiff Allen Gray appeals the opinion and award of the North Carolina Industrial Commission denying his claim for workers' compensation benefits. Plaintiff primarily argues that the Commission failed to make sufficient findings of fact to support its determination that his Achilles tendon injury was not a compensable injury by accident. We conclude that the Commission's findings, supported by competent evidence in the record, support its conclusion. We, therefore, affirm the Commission's decision.

## Facts

At the time of the hearing before the deputy commissioner, plaintiff was 52 years old. Plaintiff graduated from high school but had no other education or vocational training. After graduating from high school, plaintiff worked on his family's farm until he was 30. He then worked for Southbend, assembling commercial cook stoves. After working for Southbend for 17.5 years, plaintiff was employed by the Department of Agriculture for approximately one year, working as a security guard at the North Carolina State Fairgrounds.

In September 2006, plaintiff was hired by defendant-employer RDU Airport Authority to work as a traffic control officer. Plaintiff's responsibilities included monitoring and controlling vehicular traffic around the airport's terminals and stopping traffic to allow pedestrians to cross the roadway separating the airport's parking lots from the terminals. His work duties required him to be standing or walking during his entire shift, excluding breaks.

Prior to plaintiff's injury on 20 November 2007, plaintiff sustained an injury to his left foot. Plaintiff suffered from a bone spur and tendinitis in his left Achilles tendon and was being treated by Dr. David Boone, a certified orthopedic surgeon with Raleigh Orthopaedic Clinic. After conservative medical treatment failed, Dr. Boone recommended surgery. In June 2007, plaintiff took a medical leave of absence, and on 13 June 2007, Dr. Boone performed a surgical excision of the bone spurring posterior to the calcaneus of the left foot and debridement of the Achilles tendon with re-attachment of the tendon.

During routine follow-up visits on 28 August 2007, 25 September 2007, and 16 October 2007, plaintiff continued to complain of persistent pain. During the 16 October 2007 visit, Dr. Boone diagnosed plaintiff with persistent pain after surgery and explained to

plaintiff that it could take up to a year to resolve. Plaintiff was written out of work until 10 September 2007, with plaintiff to return to full duty work on that date. Plaintiff returned to work sometime around 10 September 2007, with no work restrictions assigned by Dr. Boone, and plaintiff performed his usual work duties. Between 10 September 2007 and 20 November 2007, plaintiff's recovery was progressing normally.

On 20 November 2007, plaintiff was working outside Terminal C at RDU. Between Terminal C and the adjacent parking lot, there is a pedestrian crosswalk, which also serves as a speed bump, roughly six feet wide and six inches taller than the surrounding pavement. From the top, the crosswalk slopes downward to the pavement of the roadway. Plaintiff was standing in the crosswalk, stopping vehicular traffic to allow pedestrians to use the crosswalk, when he stepped backward onto the section of the crosswalk that slopes down to the roadway. Plaintiff felt a "popping sensation" in his left leg, near his ankle.

Plaintiff reported the incident to his supervisor and then drove himself to Western WakeMed Emergency. Plaintiff reported that he had undergone left heel spur surgery in June 2007 and had felt a "pop" with immediate onset of acute left heel pain after stepping backward on a curb. Based on x-rays, plaintiff was diagnosed with a ruptured Achilles tendon due to trauma. Plaintiff was restricted from work for three days and told to follow-up with his treating orthopedist.

Dr. Boone saw plaintiff on 27 November 2007 and noted that plaintiff had stepped back off a curb and felt a "pop." Dr. Boone found a gap in the Achilles tendon near where it attaches to the calcaneus, consistent with an Achilles tendon rupture. X-rays showed that the suture anchors were in place and that there was no fracture. Dr. Boone recommended surgery to repair the Achilles tendon and told plaintiff that he would be non-weight bearing for at least six weeks. He also recommended a slower rehabilitation period. On 13 December 2007, Dr. Boone performed the surgery at Rex Healthcare to repair plaintiff's Achilles tendon. Dr. Boone also removed the hardware in the left calcaneus.

After filing a claim for benefits, plaintiff requested on 31 December 2007 that the case be heard by a deputy commissioner. Dr. Boone saw plaintiff for his first post-operative visit on 18 December 2007. Plaintiff reported no complaints. Dr. Boone continued to write plaintiff out of work until 5 February 2008, at which time he released

him to return to work with the restriction of seated work only. In a note dated 1 April 2008, Dr. Boone wrote plaintiff out of work until 4 April 2008, at which time plaintiff could return to work in a position that allowed flexible sitting and standing while wearing an orthopedic boot. A 29 April 2008 note released plaintiff to return to work with the restrictions of no running or jumping, but allowed plaintiff to stand and walk.

After conducting an evidentiary hearing on 6 May 2008, the deputy commissioner entered an opinion and award on 12 February 2009 denying plaintiff's claim. Plaintiff appealed to the Full Commission on 23 March 2009. On 16 July 2009, the Full Commission entered its opinion and award affirming the deputy commissioner's decision with minor modifications. In denying plaintiff's claim, the Commission found that "[t]here was no unusual or unforeseen circumstance that interrupted [plaintiff's] work routine" and that although the incident on 20 November 2007 "was the cause of the Plaintiff's tendon injury, the incident . . . was not an accident within the meaning of the Workers' Compensation Act." Based on this ultimate finding, the Commission concluded that "there was no interruption of Plaintiff's work routine by an unlooked for event, and where Plaintiff was performing his normal job in the usual manner when his injury was sustained, there was no compensable accident." The Commission, consequently, denied plaintiff's claim for benefits. On 27 July 2009, plaintiff filed a motion for additional findings of fact, claiming that the Commission had failed to address "the evidence that plaintiff was unaware of his proximity to the downward slope of the crosswalk and unexpectedly stepped backward, onto its angled edge." The Commission denied plaintiff's motion on 27 August 2009, and plaintiff timely appealed to this Court from the Commission's opinion and award.

## Discussion

Appellate review of a decision by the Industrial Commission is limited to "reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). As the fact-finding body, " '[t]he Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony.' " *Id.* at 115, 530 S.E.2d at 552 (quoting *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998)). The Commission's findings of fact are thus conclusive on appeal when supported by competent evidence,

despite evidence in the record that would support contrary findings. *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 700 (2004). Consequently, the Commission's findings may be set aside on appeal only "when there is a complete lack of competent evidence to support them[.]" *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000). The Commission's conclusions of law are, however, reviewed de novo. *McRae*, 358 N.C. at 496, 597 S.E.2d at 701.

Plaintiff contends that the Commission erred in concluding that plaintiff did not sustain an injury by accident on 20 November 2007. A plaintiff is entitled to compensation for an injury under the Workers' Compensation Act "only if (1) it is caused by an 'accident,' and (2) the accident arises out of and in the course of employment." *Pitillo v. N.C. Dep't of Envtl. Health & Natural Res.*, 151 N.C. App. 641, 645, 566 S.E.2d 807, 811 (2002); N.C. Gen. Stat. § 97-2(6) (2009). The plaintiff bears the burden of proving both elements of the claim. *Morrison v. Burlington Industries*, 304 N.C. 1, 13, 282 S.E.2d 458, 467 (1981). Neither party disputes that plaintiff's Achilles tendon injury arose out of and in the course of his employment with RDU. Rather, the parties dispute whether the manner in which plaintiff's injury occurred constitutes an "accident" within the meaning of the Workers' Compensation Act.

The terms "accident" and "injury" are separate and distinct concepts, and there must be an "accident" that produces the complained-of "injury" in order for the injury to be compensable. *O'Mary v. Clearing Corp.*, 261 N.C. 508, 510, 135 S.E.2d 193, 194 (1964). An "accident" is an "unlooked for event" and implies a result produced by a "fortuitous cause." *Cody v. Snider Lumber Co.*, 328 N.C. 67, 70, 399 S.E.2d 104, 106 (1991) (internal citation and quotation marks omitted). "If an employee is injured while carrying on [the employee's] usual tasks in the usual way the injury does not arise by accident." *Gunter v. Dayco Corp.*, 317 N.C. 670, 673, 346 S.E.2d 395, 397 (1986). In contrast, when an interruption of the employee's normal work routine occurs, introducing unusual conditions likely to result in unexpected consequences, an accidental cause will be inferred. *Id.* The "essence" of an accident is its "unusualness and unexpectedness . . . ." *Smith v. Creamery Co.*, 217 N.C. 468, 472, 8 S.E.2d 231, 233 (1940).

Thus, in order to be a compensable "injury by accident," the injury must involve more than the employee's performance of his or her usual and customary duties in the usual way. *Renfro v. Richardson Sports Ltd. Partners*, 172 N.C. App. 176, 180, 616 S.E.2d

317, 322 (2005), *disc. review denied*, 360 N.C. 535, 633 S.E.2d 821 (2006). Moreover, "once an activity, even a strenuous or otherwise unusual activity, becomes a part of the employee's normal work routine, an injury caused by such activity is not the result of an interruption of the work routine or otherwise an 'injury by accident' under the Workers' Compensation Act." *Bowles v. CTS of Asheville*, 77 N.C. App. 547, 550, 335 S.E.2d 502, 504 (1985).

In determining that plaintiff's Achilles tendon injury was not an injury by accident, the Commission found:

> 3. Plaintiff worked for Defendant-employer as a traffic control officer. Plaintiff was responsible for monitoring and controlling vehicular traffic around the airport's terminals. Plaintiff's responsibilities included stopping traffic to allow pedestrians to cross the roadway that separated the terminals from the airport's parking lots. All of his duties required him to stand or walk. He was not permitted to sit while on duty, and spent his entire work shift on his feet.
>
> . . . .
>
> 16. Plaintiff's recorded statement shows that on [20 November 2007], he stepped back in the crosswalk. This was a maneuver he would make as a normal part of his job duties. Walking and directing traffic from the crosswalk was part of his normal job duties, as was stepping forward and backward in the crosswalk. Plaintiff mainly worked in the crosswalk, but he sometimes stepped up onto the sidewalk or off the crosswalk into the roadway. The incline change was usually behind him and he was normally facing traffic. It was not unusual for Plaintiff to step back in the crosswalk as often as two or three times an hour.
>
> 17. The greater weight of the evidence shows that the Plaintiff did not trip or fall when he injured his Achilles tendon on November 20, 2007. There was no unusual or unforeseen circumstance that interrupted his work routine. . . . [W]hile this action was the cause of the Plaintiff's tendon injury, the incident . . . was not an accident within the meaning of the Workers' Compensation Act.

Based on its findings, the Commission concluded that "there was no interruption of Plaintiff's work routine by an unlooked for event, and where Plaintiff was performing his normal job in the usual manner when his injury was sustained, there was no compensable accident."

In arguing for reversal of the Commission's decision, plaintiff claims that his "misstep"—"stepping backward and unknowingly stepping from the crosswalk's flat surface onto its uneven, angled surface"—was not a part of his normal work routine, but rather was an unexpected or unlooked-for event. Plaintiff argues that the Commission failed to address this "critical issue" in its findings of fact and conclusions of law, pointing to his evidence indicating that, at the time of the incident, he was unaware of his relative position within the crosswalk and that when he stepped out of the way for the crossing pedestrians, he "unknowingly and unexpectedly" stepped from the flat portion of the crosswalk onto the sloped portion.

Plaintiff contends that this evidence requires reversal under *Konrady v. U.S. Airways, Inc.*, 165 N.C. App. 620, 626, 599 S.E.2d 593, 587 (2004), where this Court upheld the Commission's determination that the plaintiff in that case suffered an "injury by accident" when she jarred her knee exiting a van that had pulled up closer than normal to the curb so that the bottom step overlapped the curb and the bottom step was shorter than other steps. Plaintiff overlooks the significance of the standard of review in workers' compensation cases. Because the Commission concluded in *Konrady* that the plaintiff had, in fact, suffered an injury by accident, the issue was whether there was competent evidence in the record to support the Commission's findings of fact and whether those findings, in turn, supported its conclusions of law. The *Konrady* Court concluded that there was competent evidence supporting the Commission's findings that "the van pulling closer to the curb and the shorter distance between the bottom step and the ground were an unforeseen circumstance and unusual condition and that [the plaintiff] could not recall ever before having encountered that situation." *Id.* at 626, 599 S.E.2d at 597.

In addressing whether the Commission's findings supported its conclusion that the plaintiff had suffered an injury by accident, the Court in *Konrady* reasoned:

> [T]he issue is not whether exiting vans is routine for [the plaintiff], . . . but *whether something happened as she was exiting that particular van on that specific occasion that caused her to exit the van in a way that was not normal. Were there any unexpected conditions resulting in unforeseen circumstances?* Here, the unexpected conditions found by the Commission included a step that was shorter than other steps and the overlapping of the step with the curb. The unforeseen cir-

cumstances found by the Commission were that the step down from the van was much shorter than [the plaintiff] antici-pated, causing her to "misstep" and hit the ground harder than she expected.

*Id.* (emphasis added).

Here, the competent evidence supports the Commission's finding that "[t]here were no unusual or unforeseen circumstances that inter-rupted [plaintiff's] work routine." In addition to his testimony that his normal work routine involved standing, walking, and directing traffic, plaintiff also testified that during an eight hour shift, he spent roughly an hour working in the crosswalk. When he was working in the cross-walk, which is shaped like a speed bump, he normally stood "approx-imately 75% from the front of the crosswalk" so that pedestrians could not walk behind him. He was trained to stand facing traffic so that the downward slope of the crosswalk was "about a foot, foot and half" behind him. Plaintiff also testified that when he stepped out of the way to let pedestrians cross, he "would often have to step back further than that quarter space" and that he would often "step[] back onto the level surface and the gradual surface" of the crosswalk. Thus, unlike the plaintiff in *Konrady*, plaintiff's own testimony indi-cates that he previously had "encountered th[is] situation" as part of his normal work routine. 165 N.C. App. at 626, 599 S.E.2d at 597; *Bowles*, 77 N.C. App. at 550, 335 S.E.2d at 504.

Although plaintiff characterizes the incident as a "misstep," his testimony indicates that he routinely would have to step backward off the flat portion of the crosswalk and, in doing so, he would often step onto the inclined section. This evidence supports the Commission's finding that there was no unusual or unforeseen cir-cumstance interrupting plaintiff's normal work routine when he sus-tained the injury to his Achilles tendon. *See Landry v. U.S. Airways, Inc.*, 150 N.C. App. 121, 126, 563 S.E.2d 23, 27 (Hunter, J., dissenting) (holding that Commission's finding that plaintiff's normal work rou-tine was not interrupted by an unusual or unforeseen circumstance when he injured his shoulder lifting a mail bag that was heavier than expected was supported by evidence showing that "plaintiff's job required him to lift weights of up to 400 pounds; that plaintiff never knew prior to lifting mailbags how much they weighed; that it was not unusual for mailbags to be extremely heavy and that plaintiff would be unaware of the heavy weight of the bags until he lifted them; and that plaintiff was engaged in his normal duties and using his normal

motions when injured"), *rev'd per curiam for reasons stated in the dissent*, 356 N.C. 419, 571 S.E.2d 586 (2002).

Plaintiff, moreover, testified that during the incident on 20 November 2007, nothing hit him or tripped him, causing him to take the "misstep" backward. He also stated that there was "nothing wrong" with the crosswalk on 20 November 2007. During a recorded interview to determine whether plaintiff was eligible for workers' compensation benefits, plaintiff was asked whether "anything unusual or out of the ordinary happened while [he] w[as] stepping back . . . ?" Plaintiff responded: "The pain in the back of my leg." As the Supreme Court has explained, however, for the injury to be accidental in nature, "there must be some unforeseen or unusual event other than the bodily injury itself." *Rhinehart v. Market*, 271 N.C. 586, 588, 157 S.E.2d 1, 3 (1967).

The evidence in this case supports the Commission's ultimate finding that there were no unusual or unforeseen circumstances interrupting plaintiff's work routine, which, in turn, supports the Commission's conclusion that "there was no compensable accident." Thus, contrary to plaintiff's argument, the Commission did not fail to make sufficient findings of fact and conclusions of law with respect to whether plaintiff's Achilles tendon injury was an "injury by accident" under the Workers' Compensation Act.

Plaintiff nonetheless argues that the " 'accidental' character of an injury is measured from the perspective of the injured employee" and "not from 'quantifiable' considerations" regarding an employee's normal work routine. Thus, plaintiff maintains, because he did not intend to "misstep," his injury is the result of an accident. In support of his argument, plaintiff relies primarily on *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991), where the Supreme Court held that, "*[f]rom the standpoint of the injured party*, an injury intentionally inflicted by another can . . . be an 'unlooked for and untoward event . . . not expected or designed by the injured employee.' " *Id.* at 349, 407 S.E.2d at 233 (quoting *Harding v. Thomas & Howard Co.*, 256 N.C. 427, 428, 124 S.E.2d 109, 110 (1962) (first alteration and emphasis added).

Plaintiff misreads *Woodson*. The *Woodson* Court did not hold that the accidental nature of an employee's injury is to be determined from the subjective perspective of the employee, as plaintiff suggests, but rather that in cases involving intentional torts resulting in an injury to an employee, "the injury . . . is considered to be both by acci-

dent, for which the employee . . . may pursue a compensation claim under the Act, and the result of an intentional tort, for which a civil action against the employer may be maintained." *Id.* at 339, 407 S.E.2d at 227. In the portion of *Woodson* relied upon by plaintiff, the Court was simply explaining that it is "not inherently inconsistent to assert that an injury caused by the same conduct [i]s both the result of an accident, giving rise to the remedies provided by the Act, and an intentional tort, making the exclusivity provision of the Act unavailable to bar a civil action." *Id.* at 349, 407 S.E.2d at 233. In short, nothing in *Woodson* supports plaintiff's argument.

Plaintiff's contention that the "accidental character" of an injury is to be assessed from the subjective perspective of the employee posits a fundamentally different test for an "injury by accident" than the one used by our courts in construing the Workers' Compensation Act. Following plaintiff's argument to its logical conclusion, there would practically never be a non-compensable injury so long as it arose out of and in the course of employment: no employee expects to get injured on the job. Adopting plaintiff's argument would effectively render N.C. Gen. Stat. § 97-2(6)'s requirement that the injury be caused "by accident" superfluous since virtually every injury would be accidental from the point of view of the injured employee. *But see Harding*, 256 N.C. at 428, 124 S.E.2d at 110 ("The North Carolina Work[ers'] Compensation Act does not provide compensation for injury, but only for injury by accident."). Plaintiff's argument is thus overruled.

Affirmed.

Judges CALABRIA and HUNTER, Robert N., Jr. concur.