An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-705

NORTH CAROLINA COURT OF APPEALS

Filed: 7 January 2014

LUIS VALLADARES,
    Employee,

    Plaintiff

v.

                                     North Carolina
                                     Industrial Commission
                                     I.C. No. X67511

TECH ELECTRIC CORP.,
    Employer,

and

CINCINNATI INSURANCE COMPANY,

    Carrier,

    Defendants.


Appeal by Plaintiff from opinion and award entered 6 March 2013 by the North Carolina Industrial Commission. Heard in the Court of Appeals 4 November 2013.


    *Lennon, Camak & Bertics, PLLC, by Michael W. Bertics and S. Neal Camak, for Plaintiff.*

    *Cranfill Sumner & Hartzog LLP, by Roy G. Pettigrew and Sara B. Warf, for Defendants.*


DILLON, Judge.

Luis Valladares (Plaintiff) appeals from an opinion and award of the Full Commission of the North Carolina Industrial Commission (the Commission) denying his claim for workers' compensation benefits. For the following reasons, we affirm.

## I. Factual & Procedural Background

At the time of his injury, Plaintiff had been employed by Tech Electric Corp. (Defendant) for six years as an electrical foreman, an occupation which required that Plaintiff perform a significant amount of squatting, kneeling, and ladder climbing in order to "wire commercial buildings with data cables."

On 6 October 2011, Plaintiff was working within the scope of his employment with Defendant when he sustained an injury to his right knee. Plaintiff had been splicing cable together while "squat[ting] on his knees in a fetal position" when he began to stand up and his right knee "popped." An MRI and subsequent examination revealed that Plaintiff had sustained a complex medial meniscus tear, which required Plaintiff to undergo surgery.

Defendant denied Plaintiff's claim for workers' compensation benefits, and the matter came on for hearing before Deputy Commissioner Theresa B. Stephenson on 19 January 2012. Plaintiff stipulated at the hearing that his injury was not the

result of an injury "by accident" and that he was pursuing his claim solely as an occupational disease claim.

Plaintiff testified that the nature of his occupation, which, as previously stated, required him to perform a significant amount of squatting and kneeling, had placed him at an increased risk – relative to the general public – of the type of injury that he had sustained. Plaintiff's co-worker, Gary Shepard, and supervisor, Frank Morgan, both testified and corroborated Plaintiff's description of his job duties. However, Mr. Shepard, who was sixty-four years old at the time of the hearing, also testified that he performed the same job duties as Plaintiff did, but had never experienced any knee problems other than some soreness at the end of the day.

Dr. Mark Galland, Plaintiff's orthopedic surgeon, testified to the severity of Plaintiff's injury and to Plaintiff's lack of a "good recovery" despite undergoing physical therapy. He further testified that Plaintiff's injury had "a significant acute component to it"; that the injury was more likely than not caused by the act of standing up from a kneeling or crouched position; and that Plaintiff was at a higher risk of sustaining such an injury than would be individuals "who [do] not engage in [significant amounts of kneeling, squatting, and climbing] on a

regular basis, and [who] rarely, if ever, squat or spend most of their time walking in a straight line, and not rapidly changing direction, or performing lateral movement, or climbing ladders, or stairs."

Defendant's medical expert, Dr. Brian Szura, agreed that Plaintiff had suffered an acute meniscus tear while working within the scope of his employment with Defendant. He also admitted that it was "probably" true that an individual who frequently moves from a kneeling or crouching position to a standing position is more at risk of a meniscus tear than is the general population.

On 24 August 2012, the Deputy Commissioner entered an opinion and award denying Plaintiff's claim. The Deputy Commissioner rejected Plaintiff's contention that his condition constituted a compensable occupational disease on grounds that "Plaintiff failed to prove that his torn right meniscus is a diseased condition or degenerative process developing over a long time, rather than an acute injury occurring at a discrete time and place. . . . Nor did Plaintiff prove by competent evidence that he suffered from any underlying disease that led to his injury." (Citations omitted). Plaintiff appealed to the Full Commission, which, upon reviewing the record evidence and

hearing arguments from the parties, entered an opinion and award affirming the Deputy Commissioner's decision. In its 6 March 2013 opinion, the Full Commission noted the Deputy Commissioner's error in considering "gradualness" of the condition as a prerequisite for establishing a compensable occupational disease, but nevertheless denied the compensability of Plaintiff's claim on the following grounds:

> Plaintiff's claim for compensation on account of the right medial meniscus tear he suffered on October 6, 2011 must be denied, because he failed to establish that it was the result of a compensable injury by accident or occupational disease within the meaning of the North Carolina Workers' Compensation Act. While it occurred at a definite time and place following a distinct injurious event, it was not the result of an interruption of his work routine and therefore is not compensable as an injury by accident. N.C. Gen. Stat. §97-2(6); *Gray v. RDU Airport Authority*, 203 N.C. App. 521, 525, 692 S.E.2d 170, 174 (2010). With regard to occupational disease, Plaintiff failed to prove that he suffers from a disease that is characteristic of and peculiar to his employment as a telecommunications cable installer. He failed to prove that his employment placed him at an increased risk of developing a torn medial meniscus as compared to members of the general public not so employed. N.C. Gen. Stat. § 97-53(13); *Rutledge v. Tutlex Corp./Kings Yarn*, 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983). To hold otherwise based upon the doctors' testimony that a person who steps off a ladder or stands up from a crouching position has a greater potential to suffer a

torn meniscus at any given time, would turn the established law regarding occupational diseases in North Carolina on its head and make virtually every injurious event that happens at work compensable. While the holding in *Booker v. Duke Medical Center*, 297 N.C. 458, 256 S.E.2d 189 (1979) makes it clear that the element of gradualness is not necessarily determinative, it remains clear that "an occupational disease must be a disease which is a natural incident of a particular occupation, and must attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of that attending employment in general." *Booker* at 473, S.E.2d at 199 (quoting *LeLenko v. Wilson H. Lee Co.*, 128 Conn. 499, 503, 24 A.2d 253, 255 (1942) (citation and internal quotation marks omitted)).

From this opinion and award, Plaintiff appeals.

## II. Analysis

Plaintiff contends that the Commission acted under a misapprehension of the law in denying his workers' compensation claim. More specifically, Plaintiff argues that the Commission misconstrued well-established law in concluding that his condition did not qualify as a compensable "occupational disease" for workers' compensation purposes. We disagree.

Our review of the Commission's opinion and award is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v.*

*Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). "The full Commission's findings of fact 'are conclusive on appeal when supported by competent evidence,' even if there is evidence to support a contrary finding." *Chavis v. TLC Home Health Care*, 172 N.C. App. 366, 369, 616 S.E.2d 403, 408 (2005) (citation omitted). "If the conclusions of the Commission are based upon a deficiency of evidence or misapprehension of the law, the case should be remanded so 'that the evidence [may] be considered in its true legal light.'" *Clark v. Wal-Mart*, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005) (quoting *McGill v. Town of Lumberton*, 215 N.C. 752, 754, 3 S.E.2d 324, 326 (1939)) (alteration in original).

N.C. Gen. Stat. § 97-53 (2011) enumerates a list of recognized occupational diseases, such as anthrax, lead poisoning, and asbestosis. Subsection (13) of this provision sets forth a "catchall" provision, which provides that an occupational disease shall also include the following:

> Any disease, other than hearing loss covered in another subdivision of this section, which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment.

N.C. Gen. Stat. § 97-53 (13) (2011).

First articulated by our Supreme Court in *Rutledge v. Tultex Corp./Kings Yarn*, 308 N.C. 85, 301 S.E.2d 359 (1983), the now well-established test for determining whether a claimant's condition qualifies as an occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13) is as follows:

> To establish a right to workers' compensation benefits for an occupational disease under [N.C. Gen. Stat. § 97-53(13)], the employee must show: (1) the disease is characteristic of individuals engaged in the particular trade or occupation in which the claimant is engaged; (2) the disease is not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there is a causal relationship between the disease and the claimant's employment.

*Hardin v. Motor Panels, Inc.*, 136 N.C. App. 351, 354, 524 S.E.2d 368, 371 (2000) (citing *Rutledge*, 308 N.C. at 93, 301 S.E.2d at 365).

Here, the Commission denied Plaintiff's claim both on grounds that Plaintiff had not suffered a compensable injury by accident and on grounds that Plaintiff's condition did not qualify as an occupational disease. Plaintiff argues only that his condition constitutes an occupational disease, and we thus confine our analysis to this issue.

The parties have stipulated that Plaintiff's injury was acute, rather than degenerative in nature. Plaintiff thus admits that his injury was a result of the 6 October 2011 incident and not the result of a workplace-related degenerative condition. The Commission relied on this concession in denying Plaintiff's claim, concluding that there was "no expert medical evidence of record to support the contention that Plaintiff's meniscus tear was the result of a chronic *degenerative process or disease* which was caused by his employment with Defendant-Employer." (Emphasis added).

Plaintiff nevertheless contends that his acute injury qualifies as an occupational disease, in that, relative to the general public, the significant amount of kneeling, squatting, and crouching-to-standing movements he was required to perform due to his occupation placed him at an increased risk of suffering a meniscus tear-type injury. Plaintiff cites the testimony of Mr. Shepard and Mr. Morgan corroborating his own description of the physical activity associated with his job duties. Plaintiff also cites the expert testimony of Dr. Galland and Dr. Szura as supporting his position that individuals who frequently engage in this type of physical activity – i.e., kneeling and squatting – are more likely to

suffer an acute medial meniscus tear than are individuals who do not frequently engage in such activity. Although the Commission rejected this assertion and expressly found that Plaintiff's position did *not* place him at an increased risk of sustaining a meniscus tear-type injury, we find it dispositive that, as the Commission ultimately concluded, Plaintiff failed to meet his burden in proving that his condition – an acute tear of the medial meniscus in his right knee – constitutes an occupational *disease* within the meaning of N.C. Gen. Stat. § 97-53 (13) and the precedent of our Courts.

Prior to *Booker*, which was decided in 1979, our Supreme Court used the term "occupational disease" in the workers' compensation context to distinguish an "injury by accident" from a workplace-related condition that developed gradually over time. *Watkins v. Morrow*, 253 N.C. 652, 661, 118 S.E.2d 5, 11-12 (1961). In *Booker*, our Supreme Court addressed a situation in which the claimant had contracted serum hepatitis following accidental contact with infected blood cells in the laboratory where he worked. 297 N.C. at 462, 256 S.E.2d at 192-93. Although the claimant's condition did not fall within the strict definition of an "occupational disease," in that it had not developed gradually, our Supreme Court nevertheless held that

the claimant's condition constituted a compensable occupational disease. *Id.* at 474, 256 S.E.2d at 199-200. Drawing support from decisions in other jurisdictions that had considered and upheld workers' compensation awards predicated upon communicable diseases, *e.g., Ritter v. Hawkeye-Security Ins. Co.*, 178 Neb. 792, 795, 135 N.W.2d 470, 472 (1965) (upholding disability award to dishwasher who developed contact dermatitis as a result of using cleansing chemicals in his work); and *Russell v. Camden Cmty. Hosp.*, 359 A.2d 607, 611-12 (Me. 1976) (upholding award to nurse's aide who contracted tuberculosis from her patients), the *Booker* court concluded that "the claimant's job exposed him to a greater risk of contracting the disease than members of the public or employees in general" and that this finding supported the Commission's conclusion "that serum hepatitis is a disease 'characteristic of and peculiar to his occupation of lab technician.'" *Booker*, 297 N.C. at 474, 256 S.E.2d at 200.

*Booker* thus stands for the proposition that an employee who contracts a communicable disease through contact or exposure in the workplace will not be denied relief merely because the disease is not one that develops gradually over time. *Id.* However, *Booker* affords no relief to Plaintiff in the present case, since Plaintiff's condition bears little resemblance to a

communicable *disease*, such as serum hepatitis; nor does it resemble any of the occupational diseases enumerated under N.C. Gen. Stat. § 97-53 (13). In our view, *Booker* exemplifies proper application of the catchall provision – to deem compensable conditions which bear the indicia of a compensable occupational disease but are not enumerated in the statute and does not pass muster under the *Rutledge* test due to unique circumstances that have not previously been considered. The instant case does not present such circumstances; and perhaps this was the sentiment expressed by the Commission in its statement that to grant Plaintiff relief under these circumstances would be to "turn the established law regarding occupational diseases in North Carolina on its head." Regardless, we now hold that Plaintiff's condition – an acute injury consisting of a medial meniscus tear in the right knee – does not constitute a compensable occupational disease as contemplated under N.C. Gen. Stat. § 97-53 (13).

Plaintiff does not challenge any of the Commission's factual findings and predicates this appeal solely upon his contention that the Commission erred in its application of the law to its findings. Accordingly, for the reasons stated above, we affirm the Commission's 6 March 2013 opinion and award.

AFFIRMED.

Chief Judge MARTIN and Judge STEELMAN concur.

Report per Rule 30(e).