IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-651

No. COA21-70

Filed 7 December 2021

North Carolina Industrial Commission, IC No. 18-018836

JENNIFER ALDRIDGE, Employee, Plaintiff

v.

NOVANT HEALTH, INC., Employer (Self-Insured), Defendant

Appeal by Defendant from an Opinion and Award entered 30 September 2020 by the North Carolina Industrial Commission. Heard in the Court of Appeals 20 October 2021.

*Campbell & Associates, by Bradley H. Smith, for plaintiff-appellee.*

*Jason P. Burton for defendant-appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

Novant Health, Inc., (Defendant) appeals from an Opinion and Award entered by the Full Commission (Commission) of the North Carolina Industrial Commission concluding Jennifer Aldridge (Plaintiff) suffered an injury by accident and granting Plaintiff's claim for compensation under the Workers' Compensation Act. The Record reflects the following:

¶ 2    Plaintiff began working as a registered nurse for Defendant in November 2010. Plaintiff worked at "Stanback Rehabilitation" unit in Rowan Hospital in Salisbury, North Carolina. On 7 March 2018, Plaintiff was assigned to work on the "med-surg unit"—not her usually assigned unit. On that day, Kayla Beeker (Beeker) a certified nursing assistant (CNA), asked Plaintiff to assist Beeker in changing a pad underneath a patient who had soiled herself. The patient was "very large" weighing between 300 and 400 pounds. While Beeker stood on one side of the patient and pulled the patient's hip toward Beeker, Plaintiff stood on the other side and pushed the patient's hip with Plaintiff's left hand and pulled on the soiled pad with her right hand.

¶ 3    As Plaintiff pulled the pad, she heard a "snapping sound" and felt "a very sharp pain and burning sensation that went from [her] wrist to [her] elbow" and to her shoulder, neck, and back. Plaintiff had to pull with more force than usual because of the patient's size. Moreover, the patient did not help as Plaintiff tried to pull the pad from under the patient. Plaintiff sought medical treatment, including surgery, as a result of her injury. Plaintiff filed a Notice of Accident with Defendant. Defendant denied Plaintiff's workers' compensation claim on the basis that Plaintiff's injury was "not the result of an accident or sudden traumatic event."

¶ 4    On 31 July 2018, Plaintiff filed a request for a hearing with the Industrial Commission on her compensation claim. Plaintiff's compensation claim came on for

hearing on 17 January 2019 before a Deputy Commissioner. The Deputy Commissioner heard testimony from both Plaintiff's and Defendant's witnesses. In addition to the factual circumstances leading to Plaintiff's injury, Plaintiff testified that when she changes a patient's pad, the patient typically pulls themselves up on the side of the bed so that Plaintiff can roll the patient to the right and remove the pad. According to Plaintiff, the patient in this instance "wasn't helping . . . at all." When Plaintiff assisted with moving a patient who weighed as much as the patient in the incident in question, Plaintiff would always be part of a team of at least three people moving the patient. Plaintiff estimated she moved a patient of that size twice a month as part of a team of three to four people. Plaintiff also stated she would help others move patients "once a shift" on any given floor of the hospital and that "one out of five" patients were overweight.

¶ 5 Beeker testified as Defendant's witness. Although Beeker could not recall how much the patient in this case weighed, she described the patient as "pretty hefty, but it's not uncommon for two of us to be turning a patient that is overweight and not willing to help." However, Beeker explained when a patient is "extremely obese or they're a difficult patient that we've already tried once to move . . . we'll call for extra help and a lot of times it's maybe three of us, maybe four at the most." Beeker also stated she would have preferred to have three or four people moving the patient she and Plaintiff moved on the day in question. She had also never witnessed Plaintiff

attempt to move a patient weighing approximately 350 pounds with only one other person helping in the time Beeker had worked with Plaintiff.

¶ 6        Victoria Tuttle (Tuttle) testified on Plaintiff's behalf.  Tuttle was employed by Defendant as a CNA at Rowan Hospital and worked with Plaintiff once or twice a month at the time.  Tuttle testified she had to move patients weighing 350 pounds to change their pads as part of her duties with Defendant; but, when she did, "[t]hree to four" people would assist and "[s]ix would be great if they're noncompliant or they can't help themselves."  Tuttle stated she had previously tried to move a patient weighing 350 pounds with only one other person assisting but could not do it, and she had to get more help.

¶ 7        Christopher Cook (Cook) testified on Defendant's behalf.  Cook testified he was employed as a nurse manager for Defendant at Rowan Hospital on the date in question.  According to Cook, nurses and nursing assistants would change pads on patients every day and that he noticed a "trend in the population of obesity [in patients] increasing[.]"  Cook testified multiple nurses would work together in teams to move overweight patients "daily."  However, Cook was not aware of an official policy or protocol directing nurses or nursing assistants on how many employees should assist in moving patients based on a patient's weight and size.  Cook also stated that teams of at least three employees were needed to move patients on a "daily basis[.]"

¶ 8        On 16 October 2019, the Deputy Commissioner entered an Opinion and Award in Plaintiff's favor. Based on the testimony, exhibits, and depositions filed in the claim, the Deputy Commissioner made the following pertinent Findings of Fact:

> 5. In an attempt to change the soiled bed pad, CNA Beeker pulled the patient towards herself, and Plaintiff pushed from the opposite side of the bed, while also pulling on the bed pad with her right arm. The patient did not assist in moving herself. As she was pulling on the bed pad, Plaintiff heard a snap and felt sharp pain and a burning sensation in her right arm. Plaintiff immediately stopped and indicated to CNA Beeker that she had injured herself. . . .
>
>  . . . .
>
> 7. It was not unusual for Plaintiff to be asked to work a different unit; this occurred approximately two to three times per month. In general, it was not unusual for a CNA to ask Plaintiff for help; this occurred regularly. It was also not unusual for Plaintiff to pull a bed pad out from under a patient; she estimated she performed this specific task twice per month.
>
> . . . .
>
> 9. It was also not uncommon for patients to be unable or unwilling to help when being moved; this could be due to dementia, being sedated, or being post-surgical.
>
> 10. Prior to March 7, 2018, Plaintiff had assisted in moving large patients before, but only as a team of three or four people. Plaintiff estimated she assisted in this fashion approximately twice per month.
>
> 11. Prior to March 7, 2018, Plaintiff had never tried to pull out a soiled bed pad from underneath such a large patient who did not assist, with only one other employee helping.

12. . . . As a CNA, Tuttle had removed bed pads from soiled patients weighing 350 pounds as part of a team of three or four people. It was not unusual for a team of 3 or 4 people to perform this task as it occurred daily.

13. CNA Tuttle had also attempted to perform the task of removing a bed pad from a 350-pound patient with one other person, without success. CNA Tuttle had never seen Plaintiff attempt to do so.

. . . .

15. CNA Beeker agreed that with a patient as large as 350 pounds who was unable to assist, you would want a team of three or four people moving the patient, and she would call for extra help.

16. CNA Beeker had also not seen Plaintiff attempt to move a 350 pound patient with the help of just one other person.

17. The undersigned finds that removing the soiled bed pad from underneath an uncooperative patient weighing 350 pounds, with just one other employee's assistance, was not part of Plaintiff's normal work routine as a Registered Nurse for Defendant-Employer. Such task was unusually difficult and had not been performed by Plaintiff previously; therefore, it constituted an interruption of Plaintiff['s] usual work routine.

¶ 9    Consequently, the Deputy Commissioner concluded:

4. The preponderance of the evidence in this matter demonstrates Plaintiff's injury occurred while she was assisting a CNA with the task of removing a soiled bed pad from underneath an unusually large patient who was either unable or unwilling to assist in lifting herself; said task was typically performed by a team of 3 or more employees; . . . This unusually difficult task was something Plaintiff had never performed before and was not part of her normal work routine.

> 5. Accordingly, the undersigned concludes the March 7, 2018, incident constituted an interruption of plaintiff's regular work routine that was neither designed nor expected by plaintiff and is, therefore, compensable as an injury by accident. N.C. Gen. Stat. § 97-2(6).

Therefore, the Deputy Commissioner entered an award in Plaintiff's favor. Defendant filed Notice of Appeal to the Full Commission on 29 October 2019.

On 30 September 2020, "[h]aving reviewed the prior Opinion and Award based upon the record of proceedings before Deputy Commissioner Brown, . . . and the parties' briefs and oral arguments, the Full Commission" entered its Opinion and Award "pursuant to N.C. Gen. Stat. § 97-85." The Commission made the following relevant Findings of Fact:

> 4. While attempting to change the soiled bed pad, CNA Beeker pulled the patient toward herself, and plaintiff pushed from the opposite side of the bed, while also pulling on the bed pad with her right arm. The patient did not assist in moving herself. As she was pulling on the bed pad, plaintiff heard a snap and felt sharp pain and burning sensation in her right arm. Plaintiff immediately stopped and indicated to CNA Beeker that she had injured herself.
>
> . . . .
>
> 7. It was not unusual for plaintiff to encounter overweight or obese patients while at work. Mr. Cook estimated that on any given day, 50% of the patients were overweight and 25% of the patients were obese, with on average two patients as large as 350 pounds. It was also not uncommon for patients to be unable or unwilling to help when being moved, which could be due to dementia, being sedated, or being post-surgical.

8. Prior to March 7, 2018, plaintiff assisted in moving large patients, but only as a team of three or four people. Plaintiff estimated she assisted in this fashion approximately twice per month. Also prior to March 7, 2018, plaintiff never attempted to remove a soiled bed pad from underneath such a large uncooperative patient, with only one other employee helping.

¶ 11 Consequently, the Commission concluded:

1. "A plaintiff is entitled to compensation for any injury under the Workers' Compensation Act 'only if (1) it is caused by an accident, and (2) the accident arises out of and in the course of employment.' " N.C. Gen. Stat. § 97-2(6); *Gray v. RDU Airport Auth.*, 203 N.C. App. 521, 525, 692 S.E.2d 170, 174 (2010) (quotng *Pitillo v. N.C. Dep't of Envtl. Health & Natural Res.*, 151 N.C. App. 641, 645, 566 S.E.2d 807, 811 (2002); N.C. Gen. Stat. § 97-1(6) (2009)). "The plaintiff bears the burden of proving both elements of the claim." *Id.* (quoting *Morrison v. Burlington Industries*, 304 N.C. 1, 13, 282 S.E.2d 458, 467 (1981)).

2. The elements of an "accident" include the interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences. An "accident within the meaning of the North Carolina Workers' Compensation Act is "an unlooked for and untoward event which is not expected or designed by the injured employee." *Adams v. Burlington Indus. Inc.*, 61 N.C. App. 258, 260, 300 S.E.2d 455, 456 (1983).

3. "The terms 'accident' and 'injury' are separate and distinct concepts, and there must be an 'accident' that produces the complained-of 'injury' in order for the injury to be compensable." N.C. Gen. Stat. § 97-2(6); *Gray*, 203 N.C. App. at 525, 692 S.E.2d at 174; *O'Mary v. Clearing Corp.*, 261 N.C. 508, 510, 135 S.E.2d 193, 194 (1964).

4. In the present case, the preponderance of the evidence in this matter demonstrates plaintiff's injury occurred while she was assisting a CNA with the task of removing a soiled bed pad from

> beneath an unusually large patient who was either unable or unwilling to assist in lifting herself. This task was typically performed by a team of three or more employees. This unusually difficult task was something plaintiff had never performed before and was not part of her normal work routine. Accordingly, the Full Commission concludes the March 7, 2018, incident constituted an interruption of plaintiff's regular work routine that was neither designed nor expected by plaintiff and is, therefore, compensable as an injury by accident. N.C. Gen. Stat. § 97-2(6); *See Calderwood v. Charlotte-Mecklenburg Hosp. Auth.*, 135 N.C. App. 112, 519 S.E.2d 61 (1999).

Therefore, the Full Commission entered an award in Plaintiff's favor. Defendant timely filed written Notice of Appeal from the Full Commission's Opinion and Award to this Court on 29 October 2020.

## Issue

The issue on appeal is whether the Commission erred in determining Plaintiff suffered an injury by accident, and thus, was entitled to compensation.

## Analysis

Defendant argues the Commission erred in awarding Plaintiff's claim because the competent evidence in the Record did not support the Commission's Finding and Conclusion the 7 March 2018 incident was an "accident" under the Workers' Compensation Act. Our standard of review for a Commission's opinion and award is limited to whether the Commission's findings of fact support its conclusions of law. Where the competent evidence supports the Commission's findings, those findings are binding on appeal. *Legette v. Scotland Mem'l Hosp.*, 181 N.C. App. 437, 442, 640

S.E.2d 744, 748 (2007) (citation omitted). "Thus, on appeal, this Court does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (citation and quotation marks omitted). We review the Commission's conclusions of law de novo. *McRae v. Toastmaster Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004) (citation omitted).

¶ 14        Although Defendant's brief asserts the competent evidence did not support the Commission's Findings regarding Plaintiff's injury, Defendant really argues the Commission's Findings did not support its Conclusion the 7 March 2018 incident was an "accident" under the statute and, thus, compensable. Here, the Commission found: Plaintiff was injured as a result of moving the patient while trying to change the patient's soiled bed pad; it was not unusual for Plaintiff to assist in moving patients, even obese patients weighing 350 pounds; that it was not unusual for some patients to be unable or unwilling to help as Plaintiff attempted to move them and change their bed pads; but, that Plaintiff had never before attempted to change a bed pad on a patient weighing 350 pounds with only one other person, and Plaintiff had always attempted to move a patient of this size as part of a team of three to four people.

¶ 15        The competent evidence in this case supports these Findings. Plaintiff testified she had never before moved a patient of this size with only one other person helping. Beeker testified the patient involved in this case was a patient she would have preferred to have a team of three to four to move. Moreover, Beeker testified she had never seen Plaintiff move a patient of that size with just one other person before. Similarly, Tuttle testified: she had usually moved a patient of that size as part of a team of three to four; she had previously tried to move a patient of that size with just one other person helping but could not; and Tuttle had never witnessed Plaintiff move a patient of that size with just one person helping. Cook testified that, although he was not aware of any protocols for moving patients of this size, using teams of three to four people to do so occurred on a daily basis. Thus, the Record evidence supports the Commission's Finding Plaintiff had never moved a patient of this size with just one other person helping and that she routinely moved a patient of this size as part of a team of three to four.

¶ 16        The crux of Defendant's argument is that these Findings do not support the Commission's Conclusion Plaintiff's injury was the result of a compensable accident under the Workers' Compensation Act codified in Chapter 97 of our General Statutes. " 'Injury and personal injury' shall mean only injury by accident arising out of and in the course of the employment . . . ." N.C. Gen. Stat. § 97-2(6) (2019). "A plaintiff is entitled to compensation for an injury under the Workers' Compensation Act only if

(1) it is caused by an accident, and (2) the accident arises out of and in the course of employment." *Pitillo v. N.C. Dep't of Envtl. Health & Nat. Res.*, 151 N.C. App. 641, 645, 566 S.E.2d 807, 811 (2002) (citation and quotation marks omitted). "There must be an accident followed by an injury by such accident which results in harm to the employee before it is compensable under our statute." *O'Mary v. Clearing Corp.*, 261 N.C. 508, 510, 135 S.E.2d 193, 194 (1964) (citation and quotation marks omitted).

An accident is "an unlooked for or untoward event which is not expected or designed by the person who suffers the injury[;] [t]he elements of an accident are the interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences." *Shay v. Rowan Salisbury Sch.*, 205 N.C. App. 620, 624, 696 S.E.2d 763, 766 (2010) (citations omitted, brackets in original). However: "Once an activity, even a strenuous or otherwise unusual activity, becomes a part of the employee's normal work routine, an injury caused by such activity is not the result of an interruption of the work routine or otherwise an 'injury by accident' under the Workers' Compensation Act." *Bowles v. CTS of Asheville*, 77 N.C. App. 547, 550, 335 S.E.2d 502, 504 (1985) (citations omitted).

Here, the Commission concluded:

> This unusually difficult task was something plaintiff had never performed before and was not part of her normal work routine. Accordingly, the Full Commission concludes the March 7, 2018, incident constituted an interruption of plaintiff's regular work routine that was neither designed nor expected by plaintiff and

is, therefore, compensable as an injury by accident. N.C. Gen. Stat. § 97-2(6); *See Calderwood v. Charlotte-Mecklenburg Hosp. Auth.*, 135 N.C. App. 112, 519 S.E.2d 61 (1999).

The Commission's Findings Plaintiff had never moved a patient weighing 350 pounds with only one person helping and that such patients were typically moved by a team of three to four people supports the Commission's Conclusion the incident in question constituted an interruption of Plaintiff's work routine and was not designed or expected by Plaintiff.

¶ 19        *Calderwood v. Charlotte-Mecklenburg Hosp. Auth.*, the case the Commission cited in its Opinion and Award, supports Plaintiff's assertion this incident was an accident under the Workers' Compensation Act. 135 N.C. App. 112, 519 S.E.2d 61 (1999). In *Calderwood*, the plaintiff was a nurse in a labor and delivery unit. *Id.* at 113, 519 S.E.2d at 62. Plaintiff was injured when she lifted a patient's leg numerous times over a thirty-minute period; however, this patient weighed 263 pounds and was unable to assist in lifting her leg. *Id.* The plaintiff testified she routinely lifted patients' legs during labor and delivery, but that this patient's leg was unusually heavy and the plaintiff had never had to lift a patient's leg without assistance from the patient. *Id.* The Commission found that the plaintiff had conducted her job "in the usual way" and concluded the plaintiff's injury did not occur by accident. *Id.* at 114, 519 S.E.2d at 63.

¶ 20    On appeal, this Court concluded there was no evidence to support the Commission's finding the plaintiff conducted her employment in the usual way where the "undisputed evidence" was that she had never lifted a patient's leg where the patient was unusually large and unable to assist the plaintiff. *Id.* at 115-16, 519 S.E.2d at 63. We reasoned: "The question is whether her regular work routine required lifting the legs of women weighing 263 pounds" and were unable to assist. *Id.* at 116, 519 S.E.2d at 63. Although *Calderwood* addressed whether the evidence supported the Commission's finding the plaintiff conducted her work in the usual way, this Court's reversal of the Commission implied the incident could have been an accident under the statute.

¶ 21    Similarly, here, the question before the Commission was whether Plaintiff's regular work routine required her to help move a patient weighing 350 pounds, and who was unable or unwilling to assist, with only the help of one other person. The Commission's Findings that Plaintiff had never attempted to move a patient of this size with only one other person, and that such patients were usually moved by a team of three to four people supported the Conclusion this incident was unforeseen and was an interruption not designed or expected by Plaintiff. *See Legette*, 181 N.C. App. at 446, 640 S.E.2d at 750-51 (holding plaintiff moving a patient alone was an interruption to her work routine where the plaintiff had to exert more force than usual and where the maneuver was typically a two-person task).

¶ 22    Defendant argues this case is similar to *Evans v. Wilora Lake Healthcare/Hilltopper Holding Corp.*, 180 N.C. App. 337, 637 S.E.2d 194 (2006), and *Landry v. U.S. Airways, Inc.*, 150 N.C. App. 121, 563 S.E.2d 23, *rev'd per curiam*, 356 N.C. 419, 571 S.E.2d 586 (2002), where our courts held the plaintiffs' injuries were not the result of accidents.  In *Evans*, the plaintiff worked for a healthcare facility caring for residents within the facility.  *Evans*, 180 N.C. App. at 337, 637 S.E.2d at 194-95.  The plaintiff's duties included: "Feeding, passing trays, . . . grooming, dressing, undressing, [and ] changing . . . garments[.]"  *Id.* at 338, 637 S.E.2d at 195.  The plaintiff claimed her left wrist was injured as she was helping a resident—with the assistance of the resident's family member—remove the resident's pants.  *Id.*  We held although the plaintiff claimed she "exerted unexpected force to move the pad on which the resident lay . . . [n]othing in the record indicates plaintiff was performing unusual or unexpected job duties."  *Id.* at 341, 637 S.E.2d at 196.

¶ 23    The plaintiff in *Landry* worked for the airline unloading mail, freight, and luggage.  *Landry*, 150 N.C. App. at 121-22, 563 S.E.2d at 24.  The plaintiff injured himself as he lifted a mail bag that was heavier than the plaintiff had expected.  *Id.* at 122, 563 S.E.2d at 24.  The mailbags ranged from one pound to 400 pounds.  *Id.*  The Commission concluded the plaintiff's injury was not the result of an accident.  *Id.* at 123, 563 S.E.2d at 25.  This Court held the Commission's finding that "[m]ailbags often . . . were heavier or lighter than anticipated" was unsupported by the evidence

where the plaintiff "merely testified mailbags were often overweight, not that this fact was unanticipated by him when he lifted them." *Id.* at 124, 563 S.E.2d at 26. Therefore, this Court reversed the Commission's Opinion and Award. *Id.* at 124-25, 563 S.E.2d at 26.

¶ 24        However, the dissenting opinion concluded that, although the bags were sometimes heavier or lighter than expected, "the evidence as a whole clearly supports the Commission's findings that plaintiff's job required him to lift weights up to 400 pounds"; "that plaintiff never knew prior to lifting mailbags how much they weighed"; and "that it was not unusual for mailbags to be extremely heavy" and for the plaintiff to be unaware of that fact until he moved them. *Id.* at 126, 563 S.E.2d at 27. Consequently, the dissent would have concluded the plaintiff "engaged in his normal duties and using his normal motions when injured." *Id.* The North Carolina Supreme Court reversed this Court for the reasons stated in the dissent. 356 N.C. 419, 571 S.E.2d 586 (2002).

¶ 25        Here, unlike in *Evans*, Plaintiff testified she had never moved a patient of this size without more than one person assisting. The plaintiff in *Evans* did not claim that she would have usually had more help—indeed, the resident's family member was assisting the plaintiff—only that moving the resident required more force than she expected. Similarly, the plaintiff in *Landry* did not claim he would usually lift a heavy bag with more assistance, only that he did not expect the particular bag in

question to be as heavy as it was. However, there was no evidence in either of these cases showing the plaintiffs experienced unexpected circumstances outside the normal course of their employment. In this case, although Plaintiff did have to move large patients as a part of her normal duties, the Commission's Findings reflect she never had to do so in the manner which led to her injury and, unlike in *Evans* and *Landry*, this was outside the usual, normal, and expected job duties. Moreover, the testimony during the hearing supports those Findings, and it is not this Court's place to reweigh the evidence. *Adams*, 349 N.C. at 681, 509 S.E.2d at 414.

¶ 26        Thus, here, we conclude the Commission's Findings support its Conclusion Plaintiff's injury was the result of an accident. Therefore, in turn, the Commission did not err in concluding Plaintiff suffered a compensable injury under the Workers' Compensation Act. Consequently, the Commission did not err in entering its Opinion and Award in favor of Plaintiff.

## **Conclusion**

¶ 27        Accordingly, for the foregoing reasons, we affirm the Commission's Opinion and Award.

AFFIRMED.

Judges DILLON and DIETZ concur.